## P. & M. BANK v. DUNDAS, ET AL.

1. To authorize the filing of a bill of review for error in the decree, it must be such error, as is apparent upon the face of the decree itself; it is not sufficient that an appellate court might reverse upon the whole case.

2. The granting permission to file a bill of review, rests in the sound discretion of the court, and leave will not be granted, where circumstances exist, rendering it inequitable, or improper to permit it.

3. A bill being filed to foreclose a mortgage, where the mortgagor had made several alienations of portions of the mortgaged estate, subsequent to the mortgage, and a reference was made to the master, to ascertain which of the parcels so sold, were first liable to sale, and made a report, by which he directed, that a particular tract held by the P. & M. Bank should be last exposed to sale. The report was not excepted to, but was confirmed, and a sale was accordingly made under the decree. Afterwards, one of the defendants petitioned for leave to file a bill of review, for error apparent on the decree, alledging that the direction to sell the land held by the P. & M. Bank, was inconsistent with the principles settled by the master, to govern the order of the sale, and that the direction to sell the land of the Bank was a mistake: Held, that as the testimony established, that the land had been constantly depreciating in price, if not in value, since the sale, it was not just, or equitable, again to direct a sale, conceding the report to be erroneous, as this would be to expose the Bank to probable, if not certain loss, when it had been guilty of no fault, and the necessity, had been caused by the gross neglect of the party asking a resale—That in such a case, the chancellor in the exercise of a sound discretion, should refuse to permit the bill to be filed.

Writ of Error to the Chancery Court of Mobile.

THIS was a bill of review filed by the defendants in error, seeking the revision of a decree, founded on a report of the register, which is alledged to be inconsistent, and erroneous, as also the decree. That William R. Hallett, exhibited a bill against the complainant, and others, to foreclose a mortgage which Audley H. Gazzam had executed, to secure to Hallett the payment of a certain sum of money—that a decree of foreclosure and sale was had—that the several de-

fendants to the bill answered, acknowledging the validity of the mortgage, but claiming, that in the sale of the premises they should be protected as purchasers from Gazzam, by having that portion of the land which he yet held, sold first, and the rest in the inverse order of the conveyance from Gazzam —that this rule for the sale of the property, was fully acquiesced in by all the defendants—that their several answers exhibit their derivative titles, and the dates of the conveyances from Gazzam, under which they claim. That the complainants, by their answers, shew their title to be under a deed from Gazzam to Wm. P. Btown, dated 16th November, 1835—that the P. & M. Bank exhibit their title to be, under a deed from Gazzam to Brown & Edmonds, dated 9th April, 1836.

That the register reported the order of the conveyances from Gazzam, and also, "that the premises mortgaged, not embraced in the deeds, should be sold first, and that the property embraced in the deeds, should be sold in the inverse order of the dates, or that those portions of the property last in Gazzam's possession, should be sold first." This the complainants aver to be the true rule, and was insisted on by all the defendants, and acquiesced in by the solicitors.

That after the confirmation of the report, they discovered that immediately after the rule laid down by the register, as previously cited, the report contained the following paragraph: "That that portion of the property which passed from Brown, or Brown & Edmonds, and has become the property of the P. & M. Bank, should be sold *last* of the said property conveyed to said Brown & Edmonds, or to said Brown, by said Gazzam." That after the discovery of the paragraph above quoted, the complainants regarded it as an accidental error, supposing the register had fallen into the mistake of regarding the title of the P. & M. Bank, under the deed of the 16th November, 1835, and not under the deed of April 9th, 1836—that the complainants alone, of all the parties, claim under the deed of 16th November, 1835—that in pursuance of the rule asserted by the register, the portion of the premises claimed by complainants, should be the last sold —that the mode of sale was well understood to be, that reported by the register, which is the rule complainants insist

on—that it was also well understood, that the titles disclosed by the record, and answers, were acquiesced in by the complainants, and the then parties to the original proceedings. The relief prayed is, that the premises of complainant may be sold last, and that the decree be opened, and again referred to the register.

The P. & M. Bank answer the bill, and after demurring to it for want of equity, admit the filing of the bill, and the decree as stated in the bill of review. That the plaintiffs derived their title by deeds of bargain and sale, for a valuable consideration, with full covenants, against incumbrances, and of general warranty, against all persons under William P. Brown, who purchased the same with warranty of the same kind from Gazzam, the mortgagor—that the report of the master is not fully set out in the bill, that it does not appear from that report, that the plaintiff produced any title to the premises before the master, whereas it does appear from the report, that respondent produced a title of the description before set forth. Denies that there was any agreement of counsel, as to the form, or mode of sale—that the report and decree are plain and perspicuous, proceeding upon sound legal principles, such as respondent was entitled to.

That it would be manifestly unjust, to alter or disturb the decree after it has been executed—that the property sold was full, and ample, for the payment of the debt—that it would have been in the power of the respondent, to bid upon the property, and thus to diminish the burden upon the property of the defendant, but for the reliance upon the order of sale prescribed by the court, and to which the plaintiff made no exception at the time the decree was made, and took no measures to alter until after the decree had been perfected. That to reverse the decree, and now impose the burden upon respondent, would be manifestly unjust, &c., and plead the decree in bar of this suit.

Other parties answer the bill, but their answers are not important.

Evidence was taken, showing the manner of the sale, the price at which the land sold compared with its then value, its depreciation, &c., for which see opinion of the court.

The chancellor considered the true rule to be, that the

property embraced in the mortgage, and not sold by the mortgagor, should be first sold to satisfy the mortgage, and that the property sold by the mortgagor, should be sold to satisfy the mortgage, in the inverse order of the dates of the sales by the mortgagor, or that those portions of the property last in possession of the mortgagor, should be sold first—and that the conclusion that the land held by the P. & M. Bank should be last sold, was in violation of this principle, and erroneous. He directed the report to be opened, and set aside, and directed a reference to the master to ascertain the relative equities of the parties, according to the rule laid down.

From this decree the P. & M. Bank prosecute this writ, and assign for error the chancellor's decree.

CAMPBELL, for the plaintiff in error.

The following are the facts of this case : Wm. R. Hallett, sold a parcel of land to A. H. Gazzam, and received a mortgage for the purchase money—Gazzam sold four parcels of this land to Brown and Edmonds. These sales are evinced by deeds of different dates.

Brown & Edmonds sell a part of this land to Hitchcock, with covenants of warranty, and against incumbrances— Hitchcock sells to Clark—Clark to Ashton, and Ashton to the P. & M. Bank.

Hallett files a bill to foreclose his mortgage, making Dundas et al., the P. & M. Bank, Brown, Edmonds, and Gazzam parties. It is referred to the master to determine the amount of the debt, and the order of sale. He reports in the case of Hallett, that the lands ought to be sold in the order of the sale by Gazzam to Brown, and Brown & Edmonds, *except* that the property claimed by the P. & M. Bank should be sold last.

This report is confirmed without exception, and the sale made conformable to it, and that sale confirmed.

This bill, is filed by Dundas et al., to set aside the master's report, and to have the Planters' Bank property sold, to exonerate their property, on the ground of a palpable error in the report and decree adopting it.

The master's report was made upon this state of facts, as

is apparent.   He had before him the four deeds of Gazzam
to Brown, and Brown & Edmonds, to parcels

and the derivative conveyances from Brown & Edmonds, *with
general covenants*, to the P. & M. Bank, which are in the re-
cord.   No evidence was produced by any other defendant, of
title, and for all that appeared to the master, no other lands
had been sold by Brown & Edmonds—or if any had been sold
by them, whether their sale was prior or subsequent to the
one under which the P. & M. Bank claimed. ·

We insisted then, that the equitable principle was, that the
mortgage money was to be raised, first from the lands in the
hands of A. H· Gazzam, the mortgagor.

This principle was conceded by all parties.

2. That if there was any property in the hands of Brown
& Edmonds, the alienees of Gazzam, that their vendees had
a right to claim the sale of those lands first, and in exonera-
tion of the lands sold by them.

3. That between the alienees of Brown & Edmonds, we
have a right to insist, that the lands last in their possession
shall be sold in exoneration of those first disposed of by
them.

This was the principle the master enforced.   It makes no
difference when Brown & Edmonds acquired their title.
This fact does not give rise to the equitable principle.   It is
the time of their alienation that establishes the right to ex-
oneration of the one alienee, by the use of the lands convey-
ed to a subsequent alienee by the alienor.   The four parcels
of land conveyed to Brown & Edmonds, are alike bound for
the mortgage money.

While those lands are in their possession, there is no equity
in favor of the sale of one parcel more than of the other.

The equities arise when they convey to a third person
with covenants.   They obtain value for the lands, and cove-
nant to guard them.   The law then authorizes the vendee to
insist upon the application of the estate bound by the mort-

84

gage, and still in their hands, to discharge his lands from the mortgage. This principle is fully recognized in the 4 Ala. R. 452, and forms the ground work in the opinion of The Bank of Mobile v. P. & M. Bank, 9 Ala. Rep. 645; 6 Paige, 35.

The case is not a proper one for a bill of review. The evidence before the master was not properly before the court, his conclusions were only properly before the court, and without the evidence there is no error apparent. The subject of this bill could not be brought before the court even after the report. [7 Ala. Rep. 217.]

This court must see that very great injustice would follow from the disturbance of sales after they have taken place. No complaint is made of the order of sale, until the sale has been made. We had the right to consider that this order was satisfactory. The property sold low, all the witnesses say, in comparison to its value, though none can say it would have produced more. We had a right to the probability of its producing more, and should not be referred to the opinions of witnesses.

We rely however upon the point, that upon the evidence before the master, his report is accurate.

Fisher, contra.

As to the derivative title of the bank, no argument need be used to show that the bank must be bound by its answer.

The case was submitted on bill and answer in the original cause.

All parts of the record will be looked into to discover error on review. [Story's Eq. Pl. 324, § 407, and note.] But the real and only question is, whether the *rule* reported by the register, and adopted by the chancellor, is the correct one. For this see 3 Pow. on M. 1013, (a); Kirkman v. Smith, 1 Ves. Sr. 257; 2 Paige, 300; 9 Ib. 648; and, as I understand, the same principle of fixing the equities according to the dates of the assignment, has recently been decided by the supreme court of Alabama, in a case argued at the last term, between the Bank of Mobile and P. & M. Bank, growing out of the notes of the Hotel and Steam Cotton Press Co.

The case of Guion v. Knapp, was relied on before the chancellor, (6 Paige, 36,) as establishing a different rule, but I think an examination of that case will satisfy the court,

that although the facts of that case are not identical with those now presented, the same principle is strictly adhered to, and that where an equity has arisen in favor of a purchaser, no subsequent act of the mortgagor, or another, can divest it.

ORMOND, J.—A bill of review lies for error apparent on the face of the decree, or for newly discovered evidence. [Story's Eq. Pl. 224, § 407 ; Dexter v. Arnold, 5 Mason, 301, and cases there cited.] It is upon the first ground that this bill is filed, and it is material to notice that it is the established doctrine, that it will not lie for error merely in the judgment. That is properly revisable on error, or appeal ; but it must be error *apparent* on the decree itself. In Perry v. Phelips, 17 Vesey, 178, Lord Eldon, after laying down the rule, and stating the distinction, between an erroneous judgment and error apparent, gives the case of an infant not having a day in court, to show cause against the decree, as an example of error apparent on the face of the decree. In England, the material facts are stated in the decree itself, but in this State, and in many others, it is not the practice to recite the facts in the decree ; we must therefore look into the pleadings, and proof, to ascertain the facts upon which the decree is based.

The proceedings in the original suit, except the master's report, and the chancellor's decree, are not found in the record. From the bill now filed, it appears that W. R. Hallett filed a bill to foreclose a mortgage, on a tract of land, executed to him by one Gazzam—that subsequent to the execution of the deed of mortgage, Gazzam, on the 16th November, 1835, conveyed a portion of the mortgaged premises to one W. P. Brown, and on the 9th April, 1836, another portion to Brown, and Brown & Edmonds—and at other subsequent dates, other portions thereof to other persons—that the complainants hold by a derivative title, under the conveyance from Gazzam to Brown of 16th November, 1835, and the P. & M. Bank also by a derivative title, under the conveyance of the 9th April, 1836. The matter being referred to the master, he reported that the portion of the mortgaged property not embraced in the deeds aforesaid should be first sold

to satisfy the mortgage, and that the property embraced in the other deeds should be sold in the inverse order of the dates; that is, that the portion of the property last in Gazzam's possession, should be first sold. The master subsequently declares that the land held by the P. & M. Bank should be last sold. This is the portion of the report which is alledged to be erroneous. The P. & M. Bank, by its answer, denies that there is any error in the report of the master, and denies that the plaintiffs produced any evidence before the master, showing that they had any interest whatever in the property. The report of the master is made a part of the answer, together with the evidence adduced before him, and on which it was made.

In our opinion the objection here taken is valid. The leading principle of the decree is, that where different parcels of mortgaged premises have been sold, at different times by the mortgagor, subject to the mortgage, the sale for the satisfaction of the mortgage, is to be made in the inverse order of the alienations. If in this case, the aliens from Gazzam, had retained the land, no difficulty whatever could have arisen, as the sale would have been made in the order of the alienations, commencing with the last, if no other fact existed, disturbing the operation of this equitable principle.

But this case is still further involved, from the fact that the parties to this suit claim derivatively, from the first and second alienees of Gazzam. The manner in which the bank derives its title, is fully set out in the proof adduced before the master, by which it appears, that it claims through several mesne conveyances, from the deed of Gazzam to Brown & Edmonds, on the 9th April, 1836, all of these deeds being with warranty of title. Of the title of the complainants we know nothing, except that they claim by a title derived from the deed of Gazzam to Brown, dated 16th November, 1835; whether this was with warranty does not appear, except from an expression of the chancellor, by which it appears that it was not—nor do we know when the intermediate conveyances from Brown were made, as they adduced no evidence whatever before the master.

Such being the true state of the case, we think it clear, there is no error apparent on the decree. We shall shall not

enter upon the inquiry, whether the omission of Gazzam to warrant the land he sold to Brown, on the 16th November, 1835, exposes this land to a sale for the satisfaction of the mortgage, in preference to a subsequent sale with warranty. The complainant has adduced no title, and therefore there cannot, as to him, be an error apparent in the decree.   Possibly, upon an appeal, or writ of error, the decree might be considered erroneous, but that is not sufficient to authorize the filing a bill of review—that would be to invade the province of the appellate court.   Perry v. Phelips, 17 Ves. 178, and Dexter v. Arnold, 5 Mason, 316, where as in this case, the question arose upon alledged error in the report of a master.

We feel the less reluctance in the decision here made, on this question, because there is another point of the cause, equally if not more decisive against the defendants in error. In England, the allowance of a bill of review is a matter of right, when there is an error apparent on the face of a decree. If it be sought on the grounds of newly discovered testimony, it can only be by leave of the court, and will not be granted if injury will thereby be caused to parties guilty of no blame or laches.   In Dexter v. Arnold, 5 Mason,. 315, Judge Story says, "it may be refused therefore, although the facts, if admitted, would change the decree, where the court, looking to all the circumstances of the case, deems it productive of mischief to innocent parties, or for any other cause unadvisable." See also, Young v. Keightly, 16 Vesey, 348; Pery v. Phelips, 17 Id. 176.   So in Wiser v. Blackly, 2 J. C. C. 488, Chancellor Kent held, that it rested in the sound discretion of the court to grant or refuse it.

It cannot be doubted that there may be cases even of error apparent upon the decree, where circumstances might exist, making it improper to permit a bill of review to be filed : but in this State, the legislature has acted on the subject, and has placed all petitions for leave to file a bill of review upon the same footing, and authorized the court to permit a bill of review to be filed when, under the circumstances of the case, it is proper to do so ; to stay the proceedings, &c. (Clay's D. 350, § 30 ;) thus placing the whole matter in the sound discretion of the court.

The facts are, that the master distinctly reported, that the lands held by the P. & M. Bank should be sold last; that is, that the lands held by the Bank should not be sold to satisfy the mortgage, unless the remainder of the land, including that held by the complainant, was insufficient for that purpose. This report was not excepted to, but was confirmed by the chancellor, and a sale directed to be made in conformity with it. A sale was thereupon made in the mode directed, and was subsequently confirmed. In all this, no blame whatever is imputable to the P. & M. Bank. No agreement in regard to the sale is proved to have been made; it took place under the decree, and in virtue of it.

As the decree placed the complainants in advance of the bank, in the sale of the property, it devolved on the former the principal burthen of protecting it against the mortgagee, and in point of fact, as appears from the testimony of Mr. Owen, the land held by the bank was not offered for sale. That the principal bidder and purchaser, was an agent of the complainants, and when the sale reached about $19,000, it was stopped, the agent telling the master, he would pay the remainder of the purchase money—about $7,000. The bank did not bid at all, obviously because the complainants, by their position under the decree, were compelled in protecting their own interests, also to protect the interest of the bank.

It appears from all the testimony, that lands in Mobile, have been constantly depreciating in price, if not in actual value, since 1837, and have depreciated since the sale, and it is only necessary to look at the position the parties then occupied, to see at once the probable, if not certain injury, which would be inflicted on the bank by directing a re-sale.

At the time of the sale, there was, it seems, a portion of the lands yet in the hands of the mortgagor, and of course primarily liable. There were also two alienations by Gazzam subsequent to those under which both the parties to this suit derived title. One to L. D. Woodruff, for the consideration of $1800, and one to Stewart & Thornton, for $30,000. On all these lands, the competition of the bank might, by enhancing the price, have diminished the burthens which would

otherwise have fallen on its own land. Still more is it impossible now to say, what will be the extent of the injury, if a sale is to be again made of these lands, many of which appear rather to have a speculative than a real value.

It is true, these apprehended results are not certain, but a re-sale may, and probably will be productive of these mischiefs, to an innocent party, and have been superinduced by the gross negligence of the other. Under these circumstances, it is our opinion, that leave to file the bill of review was improvidently given—it must therefore be here dismissed.

We have not considered one peculiarity of this case, that the reformation of the report, and re-sale, would disturb the rights of purchasers, because it appears, that with the exception of one small piece of land, it was purchased by the complainants.