## MOBILE MARINE DOCK & MUTUAL INSURANCE COMPANY *vs.* HUDER.

[BILL IN EQUITY FOR FORECLOSURE OF MORTGAGE.]

1. *Liability of mortgaged lands, as between several assignees of mortgagor, to satisfaction of mortgage debt.*—Where mortgaged lands are sold by the mortgagor, in several portions, at different times, and to different persons, and the mortgagee afterwards files a bill to foreclose, the portion of land remaining unsold must be first subjected, and then the other portions in the inverse order of their alienation ; and each portion is to be estimated at its present value, including the improvements put upon it by the purchaser.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Mrs. Mary H. Huder, on the 24th April, 1855, for the purpose of foreclosing a mortgage on a tract of land, executed to her on the 31st January, 1852, by Thomas T. Bolling; and several purchasers from Bolling, subseqent to the execution of the mortgage, were joined with him as defendants. The facts of the case, as ascertained by the master under a reference, (and about which there was no controversy,) are these : Mrs. Huder sold the land to Bolling on the 31st January, 1852, and, at the same time, took the mortgage to secure the payment of the notes given for the purchase-money. On the 1st May, 1852, Bolling sold a portion of the land to N. Walkley, for $6,000, payable as follows : $1,500 cash, $1,800 on the 1st March, 1853, $1,780 on the 1st May, 1854, and $1,620 on the 1st May, 1855; and gave Walkley a bond, conditioned to make titles on payment of the purchase-money. At the time this contract

46

was made, Walkley was in possession of the lot which he bought, under a lease from Mrs. Huder, which was made before Bolling purchased the land, and which did not expire until November, 1852. On the 9th July, 1852, Bolling sold another portion of the land to the Mobile Marine Dock and Mutual Insurance Company, for $1,400 cash, and executed to said company a deed with covenants of warranty; and the master reported that, at the time of this purchase, "said company had no notice of any earlier sale by Bolling of any portion of the mortgaged premises, other than such as may be implied by law from Walkley's possession." On the 11th April, 1853, Bolling sold other portions of the land to Charles Gascoigne, Joseph Goddard, M. Boullemet, William H. Trone and others, severally. Gascoigne's purchase was made on condition that his lot should be discharged from all liability on account of the mortgage debt, and Mrs. Huder consented to release it on his paying the purchase-money in part satisfaction of the mortgage debt; and this was accordingly done. Boullemet, Trone, and others of the last purchasers, erected valuable improvements on their lots. A portion of the land remained unsold in Bolling's hands when the bill was filed.

On these facts, the chancellor decreed, that the lot remaining unsold by Bolling was first liable for the satisfaction of the mortgage debt; that the lots sold by him in April, 1853, (except Gascoigne's) were next liable, to the extent of the prices agreed to be paid by the respective purchasers, and excluding the improvements made by the purchasers; that the lot purchased by the Mobile Marine Dock and Mutual Insurance Company was next liable, to the same extent, and that Walkley's lot was liable last of all; and he ordered a sale of the lots by the master, unless the owners voluntarily paid the respective amounts for which they were thus held liable. From this decree the said insurance company now appeals, and here assigns as error, that the chancellor erred in excluding the improvements of the several purchasers from liability to the mortgage debt, and in decreeing that the appellant's lot was liable before Walkley's.

P. Hamillon, for appellant.—1. The general rule is indisputable, that lands sold by the mortgagor are liable for the mortgage debt inversely to the order of their alienation.—1 Hilliard on Mortgages, 326, and authorities cited; P. & M. Bank v. Dundas, 10 Ala. 661; 11 Paige, 59. All improvements on the mortgaged lands become part of the land itself, and are subject to the mortgage lien.—1 Hilliard, 431, and notes; *ib.* 137–8; 2 *ib.* 309; 5 Binney, 585; 5 N. H. 54; 29 Maine, 115; 4 Metcalf, 306; 7 Metcalf, 40. The assignees of the equity of redemption take the land *cum onere*, just as it was in the hands of their assignor. The decisions in relation to growing crops, and the increase of mortgaged slaves, are analogous cases.—8 Wendell, 584; 6 Barbour, 370; 2 Denio, 174; 1 Leigh, 305; 8 Blackford, 428; 11 Howard, 375. The party thus improving property is also liable to its loss on the principle of intermixing property with that incumbered, and thereby making the whole liable.—9 Barbour, 630; 11 Metcalf, 493. Each purchaser acquires an equity to have the unsold portion of the land first subjected for the satisfaction of the mortgage debt. If the mortgagor himself should put improvements on the land remaining unsold, there can be no doubt the improvements would be liable for the mortgage debt before the land of purchasers from him; and in like manner, the improvements of subsequent purchasers, who, as against prior purchasers, simply occupy the position of the mortgagor himself, must be liable before the lands of prior purchasers.

2 The chancellor erred, also, in postponing the liability of Walkley's land, and condemning first the lot purchased by the appellant. The appellant is a purchaser for value, under an executed contract, without notice, while Walkley claims under an executory contract merely.—2 Story's Equity, § 1502. To give the equity claimed by Walkley, the alienation must be complete—the land must be conveyed—the legal title must pass.—17 Pick. 47; 11 Paige, 59. Here, as in the case of assignees of notes secured by mortgage, the priority is determined by the time of alienation. There was no alienation to Walkley when the

appellant purchased: he had acquired simply a right to have a title on payment of a sum of money *in futuro*, and occupied no better position than Bolling. His bond for titles, which called for a quit-claim deed merely, was not recorded until after the appellant's purchase; and his possession was only as tenant.

W. C. EASTON, *contra*, for Walkley, Boullemet, and others, who were summoned as appellants, but asked a severance in the assignment of errors.—1. Walkley being the first purchaser, his lot would be the last to be affected by the decree of foreclosure; the rule in such cases requiring the lots to be subjected in the inverse order of alienation.—P. & M. Bank v. Dundas, 10 Ala. 661; Gouverneur v. Lynch, 2 Paige, 300; Shannon v. Marselis, Sax. Ch. 413; Button v. Updike, 2 Green's Ch. 125; 2 Story's Equity, § 1233, and cases cited. Walkley was in possession of his purchase, as tenant of Huder, before the sale to Bolling; and, at the time of the other sales by Bolling, he was in possession as a purchaser from Bolling, and under a bond for title from Bolling. He had paid an adequate consideration for his purchase, partly in cash, and the residue in negotiable paper; which paper was passed off by Bolling before maturity. The subsequent purchasers from Bolling, being affected with notice of Walkley's possession, were bound to inquire into its character, and are chargeable with notice of the terms and conditions on which it was held.—Taylor v. Stibbert, 2 Vesey, 437; Daniels v. Davison, 16 Vesey, 254; Braman v. Wilkinson, 3 Barbour, 153; Woods v. Farmer, 7 Watts, 382; Spofford v. Manning, 6 Paige, 383; Gouverneur v. Lynch, 2 Paige, 300; Walker v. Gilbert, 1 Freeman's Ch. 323; 4 Kent's Com. 79; Sugden on Vendors, 462; Morgan v. Morgan, 3 Stewart, 383; Ohio L. & T. Co. v. Ledyard, 8 Ala. 871; Smith v. Zurcher, 9 Ala. 208; Powell v. Allred, 11 Ala. 318; Brewer v. Brewer & Logan, 19 Ala. 482; Burns v. Taylor, 23 Ala. 255; Garrett v. Lyle, 27 Ala. 586; Boyd v. Beck, 29 Ala. 713; Green v. Slater, 4 John. Ch. 39; Stafford v. Ballou, 17 Vermont, 329; Harris v. Carter, 3 Stewart, 233.

2. The improvements of the last purchasers were innocently made, and were very unequal in amount. A court of equity will not subject such improvements to the satisfaction of the mortgage debt, when the property originally covered by the mortgage is sufficient to pay it. To do so, would violate one of the fundamental principles of equity—that equality is equity—and would impose a very unequal loss on purchasers whose equities are precisely the same.—Dickey v. Thompson, 8 B. Monroe, 312.

A. J. WALKER, C. J.—In the case of P. & M. Bank v. Dundas, (10 Ala. 661,) this court seems to have approved the doctrine, that different parcels of land, included in the same mortgage, and afterwards sold by the mortgagor at different times, to different persons, are chargeable in the inverse order of the alienations. An analogous principle is asserted in the cases of Cullum v. Erwin, (4 Ala. 452,) and Bank of Mobile v. P. & M. Bank of Mobile, (9 Ala. 643.) This doctrine is opposed by the Kentucky court of appeals, and by Judge Story, (Dickey v. Thompson, 8 B. Monroe, 312; 2 Story's Eq. Jurisp. § 1233;) yet it has the support of the most of the American authorities, and of the great names of Kent and Walworth, and is, it seems to us, manifestly right in principle. Without discussing the subject here, which may be considered *res adjudicata* in this State, we refer to the authorities cited below, and to the opinion of Chief-Justice Lumpkin, of the supreme court of Georgia, in the case of Cumming v. Cumming, (3 Kelly, 460,) which fully vindicates the doctrine, both upon principle and authority, and contains the most able and thorough consideration of the question, which we have found.—Willard's Eq. Jur. 119; 1 Hilliard on Mortgages, 326; Clowes v. Dickinson, 5 Johns. Ch. R. 236; Gouverneur v. Lynch, 2 Paige, 300; Guion v. Knapp, 6 *ib.* 35; Keel v. Spraker, 8 *ib.* 181; Schryver v. Teller, 9 Paige, 173; Kellogg v. Rand, 11 Paige, 59; Conrad v. Harrison, 3 Leigh, 532; Stoney v. Shultz, 1 Hill's Ch. 500; Shannon v. Marselis, 1 Saxton's Ch. 413; Button v. Updike, 2 Green's Ch. 125; Wikoff v. Davis, 3 Green's Ch. 224; Howard Ins. Co. v.

Halsey, 4 Sandford's Ch. 565; Com. Bank v. West. Res. Bank, 11 Ohio, 444.

The lands conveyed seem to be of value largely exceeding the unpaid balance of the mortgage debt; and after it is ascertained that the different parcels of land are chargeable in the inverse order of their alienation, the question arises among the purchasers from the mortgagor, whether the contributions to the discharge of the mortgage debt, to be made first by the last purchasers, and then on backwards to the first purchasers, are to be of amounts equal to the prices at which the respective purchases from the mortgagor were made, or to the values of the respective parcels at the time of purchase, or to the present values.

The first of those modes of apportioning the charge makes the contract of each purchaser affect all the others, and makes the price agreed upon by two persons the standard of value as to others. It is, therefore, unjust, and wrong in principle. A similar mode of ascertaining the ratio of contributions among purchasers of different parcels of land, sold under an execution against the mortgagor, was considered by Chancellor Kent, and pronounced incorrect, in the case of Cheesbrough v. Millard, 1 Johns. Ch. 409. The ascertainment of the charges upon the different purchasers ought certainly to be made in reference to the value of their respective parcels; but whether the inquiry ought to be as to the value at the time of the purchase, or at present, is a question with which we have had great difficulty.

In Kentucky, it was decided, that purchasers from a mortgagor must contribute to the removal of the incumbrance, in proportion to the value of their respective parcels, fixing the value at the date of the mortgage. Morrison v. Beckwith, 4 Monroe, 76. In the same State it was afterwards decided, that purchasers from an insolvent vendee, who had not paid the purchase-money, must bear the burden of the lien according to the value of their respective parcels when they bought them.—Burk v. Chrisman, 3 B. Monroe, 50. In a still later case in the same court, it was held, after a

review of the two previous cases, that in general the proper rule was, to require contribution by the purchasers of the different parcels of the mortgaged property in proportion to the value of the land at the time of taking the account.—Dickey v. Thompson, 8 B. Monroe, 316. The last of these decisions commends itself for this—that, unlike the other two cases, it seems to have been decided upon a full consideration of the point, and to be supported by a satisfactory argument. In Kentucky a differerent rule from ours prevails, as to the degree or order in which the burden of the mortgage debt is to be borne by the purchasers from the mortgagor; but that does not affect the question of the time at which the valuation of the parcels of land should be had. The question of the time of valuation is the same, whether the burden is distributed among the purchasers, or borne by the purchasers in the inverse order of the alienations. The Kentúky court may, therefore, be regarded as giving its authority for a present valuation of the lands in this case, and it has been constrained to that position against its previous ill-advised decisions.

In the case of Cooper v. Steven, (1 Johns. Ch. R. 425,) the date of the mortgage was taken as the time of valuation. In the case of Cheesbrough v. Millard, (1 Johns. Ch. 415,) the date at which the valuation was taken does not appear with certainty. In the case of Guion v. Knapp, (6 Paige, 35,) there was an unconditional order of a sale, commencing with the land last aliened, and continuing on backward until the debt was paid. The order of such a sale was a practical repudiation of the rule, which relieves the alienees, as among themselves, from the burden of the incumbrance upon the payment of the value at the time of alienation. The same order was made in the cases of Shannon v. Marselis, (1 Saxton's Ch. 413,) Wikoff v. Davis, (3 Green's Ch. 224,) and Gouverneur v. Lynch, (2 Paige, 300.) We understand the order in the case of Button v. Updike, (2 Green's Ch. 123,) to require that two alienees of the mortgagor, who bought on the same day, and who were the first purchasers, should, in the event the debt was not satisfied by a sale of the lands

of the subsequent purchasers, contribute to the discharge of the balance in proportion to the value of their lands at the time of the sale of the lands of the subsequent purchasers.

This collation of cases shows, that the weight of authority is in favor of the adoption of the present valuation in ascertaining the amount to be paid by the respective purchasers, commencing with the last, before a resort can be had to those standing before in the order of alienation.

The effect of this is, to deny to the purchasers any benefit or compensation for the valuable improvements put upon the lands since the purchases; each purchaser standing, upon the facts of this case, charged with notice of the previous purchases. The mortgage was regularly recorded, and each purchaser, therefore, took with notice of the incumbrance. The improvements were, therefore, made by the purchasers with notice of the charge upon the lands. Compensation for improvements is allowed, where they were innocently made, under the belief that the title was good; or where the owner stands by and suffers improvements to be made without notice of his title.—2 Sugden on Ven. (bottom page 1029,) top 528, ch. 22; 2 Story's Eq. Ju. § 1237, n. 3; Putnam v. Richie, 6 Paige, 390,; Bright v. Boyd, 1 Story, 491. In this case, the purchasers having notice of the mortgage, and of all the antecedent purchases, are not within the principle; and no fraud can be imputed to the mortgagee, who may well have supposed, when the improvements were made, that the debt would be paid, and that no resort to the land would be necessary. We entertain no doubt, that neither the mortgagor nor his assignee is entitled to any compensation for improvements, as against the mortgagee.—Hughes v. Edwards, 9 Wheaton, 489–499; Clowes v. Dickinson, 5 Johns. Ch. 235; 1 Hilliard on Mort. 431; Lyle v. Ducumb, 5 Binney, 585; Jones v. Thomas, 8 Blackf. 428; Shepard v. Philbrick, 2 Denio, 174; Gillett v. Balcom, 6 Barbour, 370; Lane v. King, 8 Wend. 584; Butler v. Page, 7 Metc. 40; .Pettengill v. Evans, 5 N. H. 54; Nailer v. Stanley, 10 S. & R. 450.

As the land, with the *improvements* made by the assignee of the mortgagor, is charged, in favor of the mortgagee, with the mortgage debt, it ought to be charged in the same manner as among the different assignees of the mortgagor. For the right of the different assignees, against those who come after them in the order of alienation, is as complete and as well defined as that of the mortgagee; and there can be no reason for the extension of any favor to an assignee with notice, when accounting with the prior assignees, which does not pertain to him when accounting with the mortgagee.

The rule which charges the improvements of the mortgagor's assignee, in the distribution of the burden of the incumbrance, will operate less hardship and apparent injustice than any other which could be adopted. It is true that the condition of the assignee, who has made improvements in the confident belief that the mortgagor would pay the debt, and that he would never be disturbed, would seem to present a case of great hardship; but then he has made the improvements with his eyes open, and has voluntarily taken the hazard; and is in no other sense an object of sympathy, than is any man who takes the hazards of an enterprise, and is unfortunate. If the burden should be adjusted in reference to the value of the property at the time of alienation, still greater hardships would result. In the case of the destruction by fire of valuable improvements which were upon the land at the date of the purchase, or of the death of slaves after the purchase, it would be extremely unjust to charge the assignee of the mortgagor with the value of the land or slaves as it was at the time of the purchase. The result of such a rule would be, to make the latest assignees of the mortgagor chargeable, as to those standing before them, for that with which they would not be chargeable as to the mortgagee.

Influenced by the reasoning and authorities above adduced, we decide, that those holding under the mortgagor must, in the inverse order of their purchases, contribute to the discharge of the incumbrance the present value of their respective parcels of the land, and,

in default of their doing so, the lands should be sold. The land of the appellant stands chargeable before that purchased by Walkley; because, Walkley being in possession, the appellant stands chargeable with notice of his equity, and the maxim, *qui prior est in tempore potior est in jure*, applies.—Gouverneur v. Lynch, 2 Paige, 300; Guion v. Knapp, 6 Paige, 43. It has not been controverted on either side, that the land purchased by Gascoigne is relieved from the charge of the mortgage debt; and therefore, without comment, we give our approval to the chancellor's decision on that point. If any of the mortgaged land remains unaliened by the mortgagor, it must be first sold.

The decree of the chancellor is reversed, and the cause remanded for further proceedings in pursuance of the foregoing opinion.