# Aderholt *v.* Henry.

*Bill in Equity to enforce Vendor's Lien on Land; Petitions between Purchasers of Different Parcels.*

1. *Vendor's lien; priority as between sub-purchasers.*—As a general rule, in enforcing a lien or incumbrance on land, which has been sold and conveyed in parcels to different persons, a court of equity pursues the inverse order of alienation, first subjecting the unsold portions remaining in the hands of the incumbrancer; but the principle extends

only to sub-purchasers with covenants of warranty, and is never allowed to work injustice, being subject to modification by particular facts and circumstances affecting the rights and equities of the several purchasers as between themselves.

2. *Same; case at bar.*—In this case, a bill was filed to enforce a vendor's lien on land, after the death of the purchaser, who had sold and conveyed some portions of it, with covenants of warranty, to different persons, charged some parcels with the payment of debts, and devised the residue to his children; and the executor having sold the parcels charged with the payment of debts, a purchaser of two lots or parcels paid the purchase-money for one, but failed to pay for the other, which was afterwards resold under a decree enforcing the vendor's lien of the executor, for less than the amount of the decree; and the purchaser at the resale having afterwards bought the decree in the original suit, and attempted to subject the other portions of the land to its satisfaction, *it was held*—1st, that the lot bought and paid for at the sale by the executor must be first subjected, because its owner was primarily liable for the unpaid purchase-money of the other lot; 2d, that the purchaser at the resale was not entitled to claim exemption from liability, but stood on an equality with the several devisees, and must each contribute suitably to the discharge of the common burden; and, 3d, that each portion should be estimated at its present value, including improvements erected by the owner.

APLEAL from the Chancery Court of Etowah.

Heard before the Hon. S. K. McSPADDEN.

This is a branch of a case which has been before the court on three former appeals.—*Prickett & Maddox v. Sibert,* 71 Ala. 194; s. c., 75 Ala. 315; *Aderholt v. Henry,* 82 Ala. 541. The original bill was filed on the 2d of September, 1879, by O. W. Ward, against Mrs. Rebecca J. Maddox (now Aderholt), widow and executrix of J. W. Maddox, deceased, with their several children, his heirs and devisees, and other persons; and sought to enforce a vendor's lien on a tract of land, for the balance of purchase-money remaining unpaid. The land was sold and conveyed to said Maddox, in October, 1872, by J. P. Ralls, partly for cash, and partly on credit; and the complainant in the bill had become the owner of one of the notes, by indorsement from Ralls, and had obtained a judgment on it before filing the bill. Maddox in his life-time had sold and conveyed some portions of the tract of land, with covenants of warranty, to different persons, who were made defendants to the bill; and he died in May, 1876, having executed his last will and testament, by which he charged particular parcels with the payment of his debts, giving his executrix power to sell them for that purpose, and devised the residue to his children. In December, 1876, the executrix sold the parcels which the testator had charged with the payment of debts, C. B. Maddox becoming the purchaser of a lot, for which he paid $250;

[Aderholt v. Henry.]

and he and W. P. Prickett bid off the "Mill tract," as it is called, containing about forty acres, at the price of $1,950, but failed to pay the purchase-money.   On the 22d of September, 1879, the executrix filed a bill against them in said court, seeking to subject said tract of forty acres to sale in satisfaction of her vendor's lien; and she obtained a decree on the 24th of April, 1880, for $2,307.59.   At a sale by the register under this decree, Sam. Henry became the purchaser of the "Mill tract" at the price of $400; and having paid the amount of his bid, he received a deed from the register, dated 12th February, 1881.   In the meantime, Ward, the complainant in the original bill, had died, and the suit had been revived in favor of his widow and W. J. Sibert as administrators; and a decree was rendered in their favor, on the 14th of November, 1883, for $1,167.59, principal and interest.   On the 1st of August, 1884, Henry procured from the administrators a transfer of said decree to himself, paying the full amount due on it, with costs; and he signed a written agreement, that he would indemnify them against any costs incurred in the further prosecution of his rights, as assignee of the decree, in their names; and that he would file a petition in the Chancery Court, or institute other proper proceedings, to have the court determine the order in which the different parcels of land should be sold, in satisfaction of the outstanding incumbrance for unpaid purchase-money.   Henry afterwards sued out an execution on this decree, and had all of the lands sold except the "Mill tract," becoming himself the purchaser.   The other defendants and claimants objected to the confirmation of this sale, and moved to set it aside; and this court sustained their contention on the last appeal, and set aside the sale.—*Aderholt v. Henry*, 82 Ala. 541.

After the remandment of the cause, Henry filed a petition, claiming exemption of the "Mill tract," and asking a sale of the other portions of the land; and counter petitions were filed by the other defendants.   On the hearing of the petitions, the chancellor rendered a decree as follows: "It is adjudged, ordered and decreed, that in proceeding to sell said Maddox lands purchased from Ralls, under the Sibert-Ward decree, the register will first sell the land, if any, not alienated or bequeathed by said J. W. Maddox in his lifetime, except the 'Mill tract'; then the lands alienated by him on the 25th of May, 1876, to John H. Burton, C. B. Maddox, and J. F, W. L. Maddox, respectively, and the

27

[Aderholt v. Henry.]

lands bequeathed by will to Rebecca J. Maddox; and should said lands fail to pay said Sibert-Ward decree, then the register will sell the land known as the 'Mill tract,' with the appurtenances thereunto belonging." Mrs. Aderholt and the other defendants, except Henry, appeal, and assign this decree as error.

A. E. GOODHUE, for appellants, cited *Aderholt v. Henry*, 82 Ala. 541; *M. D. Insurance Co. v Huder*, 35 Ala. 713; *Cullum v. Erwin*, 4 Ala. 452; *Prickett v. Sibert*, 75 Ala. 319.

WM. H. DENSON, and WATTS & SON, *contra*, cited *Hill v. McCarter*, 27 N. J. Eq. 41; *Shannon v. Marselis*, Saxt. N. J. Eq. 413; *Guion v. Knapp*, 6 Paige, 35: *Patty v. Paige*, 8 Paige, 277; *Caldwell v. Smith*, 77 Ala. 158; *Ewing v. Peck*, 17 Ala. 339; *Dothard v. Sheid*, 69 Ala. 135; *McCall v. Jones*, 72 Ala. 368; *Smith v. Perry*, 56 Ala. 266; *Wallace v. Nichols*, 56 Ala. 321; *Johnson v. Toulmin*, 18 Ala. 50; *Wells v. Morrow*, 38 Ala. 125; *Craft v. Russell*, 67 Ala. 9; *May v. Wilkerson*, 76 Ala. 543.

CLOPTON, J.—A court of equity, in charging land subject to an incumbrance, which has been successively sold and conveyed in parcels, with covenant of warranty, to different persons, pursues the inverse order of alienation. This general rule has been so repeatedly and uniformly affirmed, that, as has been said, it should be regarded *res adjudicata.*—*Mobile M. D. & Mut. Ins. Co. v. Huder*, 35 Ala. 713; *Prickett v. Sibert*, 75 Ala. 315. The application of the rule rests on the equitable principle, that an incumbrancer, having a paramount lien on the entire land, shall first exhaust that parcel, the sale of which will not prejudice a *bona fide* purchaser of another parcel. In order to successfully invoke the protection of the rule, the alienees first in time must be *bona fide* purchasers, and the successive alienees have notice, actual or constructive, of the antecedent sale and conveyance. Want of notice of the common incumbrance is not requisite. If any are *bona fide* purchasers without notice, their right to hold the property discharged of the incumbrance is governed by different principles. Generally, the rule may be invoked whenever the alienee has a right, as against the common vendor, to have the parcel bought and paid for by him free from the incumbrance. Facts and circumstances affecting and qualifying the rights and equities of the different purchas-

[Aderholt v. Henry.]

ers, as between themselves, may materially modify the application of the rule; it will not be applied, if its application works injustice.    With this general statement of the rule and its qualifications, we pass to a consideration of the equities of the parties.

A bill was filed by the transferrees of a note given by J. W. Maddox for a part of the purchase-money of the land, which had been bought by him in October, 1872, to enforce a vendor's lien.    A final decree of sale was made in November, 1883.    Maddox having died before the filing of the bill, his heirs and devisees were made defendants.    He sold and conveyed, in his life-time, parcels of the land to different persons, and by his will devised a part of it to be sold for the payment of his debts, and other portions to some of his children.    The alienations, first in the order of time, bear date May 25, 1876; on which day he conveyed, with covenant of warranty, by three separate conveyances, different parcels to John H. Burton, C. B. Maddox, and F. W. L. Maddox.    It is satisfactorily shown by the evidence, that the first two conveyances were made on a valuable consideration; the last is a voluntary conveyance.    As to Burton, the evidence discloses no fact or circumstance which impairs or displaces his right to a preference over the others.    Being a *bona fide* purchaser, with a stipulation for a good and unincumbered title, he is unquestionably entitled to have the other portions of the land sold before his is resorted to.    C. B. Maddox, though a purchaser for a valuable consideration, occupies an entirely different position, as will be hereafter shown.

The next point of consideration relates to the equities between appellee, Henry, and the devisees; to a clear understanding of which a statement of other facts is requisite. On the same day on which the conveyances above mentioned were made, J. W. Maddox made his will, and died a few days thereafter.    By the will, power was conferred on the executrix to sell, for the payment of his debts, those parts of the land designated in the record as the "Mill tract," and a half interest in three acres previously conveyed to C. B. Maddox, and also one acre on which the store-house stood.    The executrix executed the power of sale December 22, 1876.    At the sale, C. B. Maddox purchased the one acre, and the half interest in the three acres, the purchase-money for which he paid.    C. B. Maddox and Prickett purchased the "Mill tract." In consequence of their failure to pay the purchase-money,

the executrix filed a bill in September, 1879, to subject it to the payment thereof. On October 23, 1880, a decree was rendered ascertaining that Maddox and Prickett were indebted about the sum of $2,300, and ordering the land to be sold for its payment. It was sold by the register under the decree, January 3, 1881, and bought by Henry for $400.

The bill, on which the present decree of sale was made, was filed *before* the bill on which the decree was rendered under which Henry bought, and was pending at the time of his purchase. He necessarily had notice of the vendor's lien, and purchased subject to it. There is evidence showing that the existence and amount of the vendor's lien were considered and estimated by him in determining the price which he was willing to pay for the land. The rule, to pursue the inverse order of alienation, does not extend to a case, where a part of the land is sold subject to the paramount incumbrance. When a vendor sells a part of a tract, subject to a mortgage, which covers the entire tract, the vendor and purchaser stand on the same level, and must contribute in proportion to their respective interests. Successive purchasers of an equity of redemption, sold by the sheriff in parcels at different times, are not liable in the inverse order of alienation. Black, C. J., says: "Two purchasers at a sheriff's sale, subject to a mortgage, which is a common incumbrance on the land of both, stand on a level. Neither of them has done or suffered any thing, which entitles him to a preference over the other. Equality is equity. They must pay the mortgage in proportion to the value of their respective lots."

The contention of counsel, that the devisees are estopped by the decree under which Henry bought, on the ground that they were parties, can not be sustained. By the purchase, Henry acquired all the title and interest in and to the "Mill tract," which they had as heirs and devisees, and they are estopped from asserting any right or title to that particular land. But, the question here is not a question of right or title to the land, but of the equities between successive purchasers and devisees of parcels of land covered by a common vendor's lien, subject to which all of them took their respective interests. The devisees are affected by all the equities to which the devised parcels were subject in the hands of the testator, and Henry's equity is the same as if he had purchased from the testator, subject to the vendor's lien. If a mortgagor sells a part of the mortgaged lands,

[Aderholt v. Henry.]

subject to the mortgage, the part which he retains, and the part sold, are ratably liable to the mortgage debt. Henry, having purchased subject to the vendor's lien, has no claim to a preference over the devisees. The equities between them are equal, and equality of burden becomes equity. Their several parcels are liable to contribute in proportion to their respective values. In such case, the principle of contribution applies. The same observations apply to F. W. Maddox's part, he being a mere volunteer.—2 Lead. Cas. Eq. 304. "When the deeds to the successive grantees are not warranty, or equivalent thereto, but simply purport to convey the mortgagor's title, right and interest in the parcels, the intention is clear, that the grantees respectively assume their portions of the burden."—3 Pom. Eq. Jur. § 1225.

The remaining question relates to the equities between C. B. Maddox and the other parties. The interest of the testator in the "Mill tract" was specially charged with the payment of his debts, and sold for that purpose. C. B. Maddox became the purchaser. The payment of the purchase-money of the "Mill tract," and its application to the debts, would have relieved the land of the vendor's lien, and the devisees and Henry would have received their parts or parcels free of incumbrance. C. B. Maddox owes now, on account of the purchase-money, more than enough to pay the amount of the decree of sale. Being aware that the "Mill tract" was specially charged and sold to pay the debts of the testator, his purchase imposed an obligation to furnish the money for that purpose, and thus relieve the balance of the land. It is still his legal and equitable duty to pay what he owes in exoneration of the other parcels. Says Mr. Pomeroy: "Although the deeds are warranties, so that the doctrine will otherwise apply, any particular grantee may, by his subsequent omissions, or by his subsequent dealings with other parties, disturb the order of the equities in his own favor, and create equities in behalf of other owners, and even render his own primarily liable as between all the grantees."—3 Pom. Eq. Jur. § 1225. It would be inequitable to allow him, by his failure to pay the purchase-money for the "Mill tract," to throw the burden of the vendor's lien on the other owners, and be himself relieved. The other parties have a superior equity, and in adjusting the equities between them, the court should direct his land to be first sold.

In determining the proportions which should be contributed by the parcels owned by Henry, F. W. Maddox and the devisees, the court will be governed by the rule settled in *Mo. & Mar. Dock & Mut. Ins. Co. v. Huder*, 35 Ala. 713.

Reversed and remanded.