# Northwestern Land Association *et al.* v. Harris, *et al.*

*Bill in Equity to foreclose a Mortgage.*

1. *Mortgage; mode of foreclosure when land sold by mortgagor; inverse order of alienation.*—Where a mortgage to secure the payment of the purchase money of land provides that in the event of a sale of any portion of the lands contained in the mortgage, the mortgagee would, upon the payment to him of the purchase money for the por-

[Northwestern Land Association *et al.* v. Harris *et al.*]

tion so sold, release such portion from the mortgage, and credit the amount so paid on the mortgage debt, and the mortgagor subsequently sells a portion of the mortgaged lands to one who had notice of such provision, paying over to the mortgagee the purchase money paid in cash, and reserving a lien upon the part sold for the deferred payments, and delivering the notes given therefor to the mortgagee, the rule, that portions of mortgaged property, alienated after the execution of the mortgage, are, upon a foreclosure of the mortgage, to be sold in the inverse order of their alienation, does not apply; but foreclosure should be first had on the land so subsequently sold, for the amount due upon the notes given for the deferred payments, before resorting to the land held by the mortgagor, or held by a purchaser from him succeeding to his equities.

APPEAL from the Chancery Court Madison.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed January 30, 1894, by the appellees, C. A. Robinson and wife, Joanna S. Robinson, hereafter called Mrs. Robinson, to foreclose a mortgage executed by the North Alabama Improvement Company, hereinafter called the Improvement Company, to Mrs. Robinson, on May 20, 1887, to secure payment of two notes for $8,333.33, each, bearing date May 20, 1887, made by Improvement Company and payable to Mrs. Robinson twelve and twenty-four months after date, respectively. Mrs. Robinson sold and conveyed to the Improvement Company for the consideration of $25,000 a tract of land in Madison county, Alabama. One-third of the purchase money was paid in cash, and the balance was to be paid in two equal instalments of twelve and twenty-four months, as evidenced by the said two notes, said mortgage being given on said tract of land to secure their payment. One of the conditions of this mortgage was that in the event the Improvement Company should sell any portion of the land, Mrs. Robinson, upon payment to her of the purchase money for such portion so sold, would release such portion from the mortgage, and credit said notes with amount so paid. This condition is copied in the opinion.

The Improvement Company afterwards, on May 16, 1888, sold a part of the land so purchased by it to Julia C. Harris, hereinafter called Mrs. Harris, for $13,000, and executed to her its deed, bearing date August 1, 1889, conveying that part of the land sold to her, reciting in the conveyance the sale of the land to her on May 16,

1888, for the sum of $13,000, one-third of which was paid in cash, and the notes of Mrs. Harris and her husband, C. C. Harris, of equal amounts being given for the deferred payments, payable one and two years from date with interest from September 1, 1888, expressly reserving a lien upon the land for their payment.

The prayer of the bill is copied in the opinion. The Improvement Company demurred to the bill upon the following grounds : "1. That said bill seeks to enforce the sale of that portion of the land decribed in the bill which is still held by the North Alabama Improvement Company before that part which was sold to the other defendants, and the bill shows on its face the relief is contrary to the express agreement of the parties. 2. Said bill seeks relief in express violation of the agreement between this defendant and the complainants, without alleging or showing any grounds therefor."

This demurrer was overruled. Thereupon the Improvement Company filed its answer, which it prayed to be taken as a cross bill, and asked for the relief which is stated in the opinion. The Improvement Company, in this answer and cross bill, avers it was understood and agreed between it and Mrs. Robinson, that if it should sell any portion of the land described in the mortgage, she would, upon the payment to her of the purchase money for the portion sold, release such portion from said mortgage, and credit the notes described in the mortgage with the amounts so paid; and that thereafter the Improvement Company made said sale of a part of said land to Mrs. Harris for the sum of $13,000, upon the terms stated above ; and that the cash paid by Mrs. Harris was paid to Mrs. Robinson on said notes due her, and that these notes were transferred and assigned to her; that she accepted the transfer and assignment of said notes as additional and further security for payment of said indebtedness due to her, and thereby obligated herself to collect the Harris notes and apply the same to the payment of the indebtedness due her. The Improvement Company further avers in its answer and cross bill, that under and by virtue of the terms of said mortgage and the agreement between it and Mrs. Robinson, it is her duty to subject the land sold to Mrs. Harris to the extent of the balance due by her ; first, to the payment of the debt due to Mrs. Robinson by the Im-

provement Company; and if there remains anything due after applying the proceeds of the sale of said land sold to Mrs. Harris to the extent of the balance due on the notes given by her and C. C. Harris, then the balance of the land should be sold; that after all credits have been entered to which said notes of the Improvement Company are entitled, the property other than that sold to Mrs. Harris is of value sufficient to pay any balance that might be due on said Improvement Company notes, and that the Improvement Company stands ready and willing to pay whatever may be due from it after the amount due Mrs. Harris is collected and applied to the payment of said indebtedness due by the Improvement Company. To this cross bill Julia C. and C. C. Harris demurred, upon the following grounds: "1st. The pleadings in this cause show that the defendant, the North Alabama Improvement Company, purchased the lands described from the complainants in the original bill, and sold a portion thereof to these defendants, and said cross bill seeks to subject the portion so sold to these defendants to the payment of the purchase money due complainants in original bill from complainants in the cross bill, in ease and relief of the portion of said property still retained and owned by said complainant in the cross bill. 2d. Because the lands mentioned and described should be sold for the satisfaction of the amount that may be due complainants, in the inverse order of their alienation, whereas said cross bill seeks to subject the lands purchased by these defendants (who are sub-purchasers) to the payment of complainant's indebtedness, in ease and relief of the lands retained and owned by the North Alabama Improvement Company, which purchased the whole from complainant, Robinson. 3d. Because said cross bill seeks to subject the lands of these defendants, purchased by them from the Improvement Company, to the payment of an indebtedness due from the Improvement Company to Robinson, while at the same time the pleadings show that the Improvement Company owns and possesses a large portion of the land which it has never conveyed and which is equally liable with the land of these respondents to the satisfaction of complainant's claim."

The chancellor sustained this demurrer, and ordered the cross bill dismissed. The other facts of the case are sufficiently stated in the opinion.

[Northwestern Land Association *et al.* v. Harris *et al.*]

The appeal is taken from the decree rendered on the. submission on the pleadings and proof, in which the relief.prayed for in the original bill was granted ; and this decree and the decree sustaining the demurrer to the cross bill are here assigned as error.

HUMES, SHEFFEY & SPEAKE, for appellants,—1. The rule that parcels of mortgaged property alienated subsequently to the execution of the mortgage, are to be sold in the inverse order of their alienation, does not apply when the purchaser of one of the parcels has assumed and agreed to pay the mortgage debt.—Wiltsie on Mortgage Foreclosure, § 510 ; *Warren·v. Boynton,* 2 . Barb. 13 ; *Torrey v. Bank,* 9 Paige 649 ; *Halsey v. Reed,* 9 Paige 446 ; *Ross v. Haines,* 5 N. J. Eq. 632 ; *Engle v. Haines,* Ib. 186 ; s. c. 43 Amer. Dec. 624.

2. Where a mortgagor sells a portion of the mortgaged premises, and in the deed of conveyance expressly stipulates that it is "subject to the payment by the said grantee of the existing liens upon said premises," the rule does not apply.—Wiltsie on Mortgage Foreclosure, § 510 ; *Hoy v. Bramhall,* 10 N. J. Eq. 563. If by the terms of the sale of a part of the mortgaged premises, the· mortgage is to remain a common charge upon the whole premises, and is to be paid by the mortgagor and purchaser, and there is no special agreement as to the proportion which each one shall pay, the parcels will be subject to their *pro rata* share of the incumbrance.— Wiltsie on Mortgage Foreclosure, § 510 ; *Briscoe v. Power,* 47 Ill. 447 ; *Hoy v. Bramhall,* 19 N. J. Eq. 463.

3. As a general rule, in enforcing a lien or incumbrance on land, which has ·been sold and conveyed in parcels to different persons, a court of equity pursues the inverse order of alienation, for subjecting the unsold portions remaining in the hands of the incumbrancer ; but the principle extends only to sub-purchasers with covenants of warranty, and is never allowed to work injustice, being subject to modification by particular facts and circumstances affecting the rights and equities of the several purchasers as between themselves.— *Aderholt v. Henry,* 87 Ala. 415.

WILLIAM RICHARDSON, *contra.* — Appellee contends that the well established rule is : "Where mortgaged

lands are sold by the mortgagor in several portions at different times and to different persons, and the mortgagee afterwards files a bill to foreclose, the portion of the land remaining unsold, must be first subjected and then the other portions in the inverse order of their alienation.''   This general rule has been so repeatedly and uniformly affirmed, it is now regarded in Alabama, at least, as *res adjudicata.*—*Bank v. Dundas,* 10 Ala. 661; *Mobile &c. Ins. Co. v. Huder,* 35 Ala. 713 ; *Dacus v. Streety,* 59 Ala. 183 ; *Prickett v. Sibert,* 75 Ala. 315 ; *Aderholt v. Henry,* 87 Ala. 415 ; *Millsaps v. Bond,* (Miss.) 1 So. Rep. 506 ; 1 Hilliard on Mortgages, 326 ; *Hopkins v. Wolley,* 81 N. Y. 77 ;   *Coles v. Appleby,* 87 Ala. 121 ; 15 Amer. & Eng. Encyc. of Law, 831, note 2.

HARALSON, J.—There is no dispute as to what the North Alabama Improvement Company, the mortgagor grantor of Mrs. Julia C. Harris of a part of the mortgaged lands, owed Mrs. Robinson, as a balance on its mortgage debt to her, nor as to the amount Mrs. Harris and her husband, C. C. Harris, owed on their joint notes as a balance on the part of the land she bought from the Improvement Company, after the execution of its mortgage to Mrs. Robinson.   The company owed, as ascertained by the register, $11,336.54, and Mrs. Harris, $5,750.78.

. The prayer of the bill is, that in foreclosing the mortgage the court should order the register "to sell, first, that part of the land embraced in said mortgage, which was not conveyed by the said Improvement Company, and if this be insufficient to pay the balance, due on complainants' debt, then sell the land conveyed to Julia C. Harris.''   The original bill was amended, setting up that the Improvement Company, before the filing of the bill, sold and conveyed to the Northwestern Land Association, whatever right, title or interest it had in the mortgaged lands, except that part sold to Mrs, Harris, and the prayer was amended, asking that the lands sold to the Association be first condemned to sale for the satisfaction of the mortgage indebtedness.

The Improvement Company, making its answer a cross-bill, prayed in substance, that the lands sold to Mrs. Harris be first sold, and the proceeds applied towards the payment of Mrs. Robinson's mortgage debt,

before resorting to the remainder of the lands in the ownership of the Improvement Company, not conveyed to Mrs. Harris; and that judgment be rendered against Mrs. Harris and her husband, C. C. Harris, for any deficit remaining unpaid on their debt, after the sale of the portion of the land sold to Mrs. Harris, &c.

The chancery court dismissed the cross-bill on demurrer, and decreed foreclosure and sale in conformity with the prayer of the bill, adopting the theory in such cases, that the land should be sold in the inverse order of alienation.

We cannot do better, than to state the principles governing the case, as they have been stated by Mr. Pomeroy, supported apparently by the decisions of the courts of all the States, including our own, except, perhaps, the courts of Kentucky and Iowa, viz.: "Whenever the mortgagor has conveyed separate parcels of the mortgaged premises by warranty deeds to successive grantees, and there are no special provisions in any of the deeds, and no other dealings between themselves, or with the mortgagor, which disturb the equities otherwise existing, a priority results, depending upon the order of conveyance. As between the mortgagor and all the grantees, the parcel in his hands, if any, is primarily liable for the whole mortgage debt, and should be exhausted before having recourse to any of theirs; as between the grantees, their parcels are liable in the inverse order of their alienation, any parcel chargeable first in order must be exhausted before recourse is had to the second."—3 Pom. Eq. Jur., § 1224; 2 Jones on Mortgages, § 1620; *P. & M. Bank v. Dundas*, 10 Ala. 661; *Mobile &c. Ins. Co. v. Huder*, 35 Ala. 713; *Relfe v. Bibb*, 43 Ala. 519; *Wallace v. Nichols*, 56 Ala. 321; *Dacus v. Streety*, 59 Ala. 183; *Prickett v. Sibert*, 75 Ala. 319; *Aderholt v. Henry*, 87 Ala. 418. In the same section referred to, Mr. Pomeroy states the reason of the rule to be, that "the form of the deed shows that the grantee not only assumed payment of no portion of the mortgage debt, but did not buy his parcel even *subject* to the mortgage; and the entire burden was, therefore, left upon the portion of land remaining in the ownership of the mortgagor. Whatever, be the rights of the mortgagee to resort to either or both of the parcels, it is plainly the equitable duty of the mortgagor to assume

the whole debt, and thus to free the grantee's parcel from the lien."

But, there are circumstances which disturb these equities and defeat this rule.. The same learned author upon this subject observes, that the doctrine just stated "is one of purely equitable origin, and is not an absolute rule of law, and if the purely equitable reasons on which it rests are wanting, it ceases to operate." In the case from this court last cited,—87 Ala. ——, it is said : "Generally, the rule may be invoked whenever the alienee has a right, as against the common vendor, to have the parcel bought and paid for by him, free from the incumbrance." If the alienee has no such right, the rule would, of course, not apply. .

In the mortgage of the Improvement Company to Mrs. Robinson, appears the following, as one of its conditions : "And upon the further condition, that in the event the North Alabama Improvement Company shall sell any portion of the above described lands, the party of the second part, Joanna S. Robinson, upon the payment to her of the purchase money for such portion so sold, will release such portion from the mortgage, and credit the above described notes with the amount so paid." This mortgage was duly recorded, and Mrs. Harris had notice of its provisions. It is averred in the answer and cross-bill of the company, and not denied, that the one-third cash payment for the lands sold to Mrs. Harris,—amounting to $4,333.33,—was paid to Mrs. Robinson, and the two notes given to the Improvement Company, for the balance, by her and her husband, C. C. Harris, each for $4,333.33, and dated on the date of the sale to her, one payable twelve months, and the other two years after date, and each containing the statement of its consideration to be, "for deferred payment on the property purchased, as per deed executed this day," were indorsed to Mrs. Robinson and her husband, by the Improvement Company. On these notes, Mrs. Harris made several payments at different times, sufficient to reduce her and her husband's debt at the date of the register's report, to $5,750.78.

The evident intention of the condition in the mortgage was, that, in case of sale of a part of the land mortgaged, the mortgagor might get the benefit of the proceeds arising from such sale when paid, to be applied

in extinguishment of its own indebtedness to Mrs. Robinson, and to that extent, in ease or exoneration of the mortgage incumbrance on the part of the lands remaining in its ownership. The payments made by Mrs. Harris to Mrs. Robinson, and the transfer to her of the two notes of Mrs. Harris and her said husband, for the balance due by her on the purchase, and the subsequent payments made on these notes, all of which went as payments on the mortgage debt, evidence such an intention as understood by all the parties. The deed of the Improvement Company to Mrs. Harris is not shown to have contained a warranty of title, and even if it did, the equities between her and her vendor would be preserved according to their dealings. Not having paid the whole, but the larger part of the purchase money, the obvious equity of the transaction between her and her vendor is, to take the case from under the operation of the rule in respect to a sale first of the land remaining in ownership of the mortgagor, and afterwards a sale, if necessary, of that of the vendee of the mortgagor, and require the sale first of the lands sold to the vendee, Mrs. Harris, and afterwards a sale of the balance for anything that may remain owing on the mortgage to Mrs. Robinson. Mrs. Harris still owes the debt, and ought to be required to do all she undertook in the beginning for the purposes intended. Her rights will thus be preserved as fully as she undertook to contract for them, and the land remaining in the ownership of the Improvement Company allowed to stand subject to sale under the mortgage, unless the balance due thereon is paid by the company, which, in its cross-bill, it offers to do. A decree to this effect, will accomplish just what the parties started out to do, and what would have been done, if each had carried out his undertaking. When the lands of Mrs. Harris have been sold, the proceeds of the sale applied to the mortgage debt will extinguish her debt, *pro tanto*. If the land should not sell for a sum sufficient to pay the balance she and her husband owes, as it has been ascertained, they, of course, would be liable on their notes for such balance remaining unpaid, to whoever may be the owner of the notes. They are now held, as shown, by Mrs. Robinson, merely as collateral security to her debt from the Improvement Company.

The court erred in sustaining the demurrers to the cross-bill and in the decree rendered for the sale of the lands.

The appellant, the Northwestern Land Association, succeeds, as is shown, to the rights and equities of its vendor, the North Alabama Improvement Company, in the lands conveyed by said company to it.

Reversed and remanded.