Lane
v.
King.

## LANE *vs.* KING.

A *lessee* of the *mortgagor*, under a lease executed subsequent to the mortage, is not entitled as against the *mortgagee* to crops growing on the mortgaged premises at the time of the foreclosure and sale of the same; and the *mortgagee* becoming the purchaser, may maintain *trespass* against the lessee for taking and carrying away the crops.

ERROR from Greene common pleas. King sued Lane in a justice's court for cutting and carrying away rye growing upon a certain farm, and recovered judgment. Lane appealed to the common pleas of Greene, and on the trial in that court the following facts appeared: in December, 1827, one Lampman executed a mortgage of a farm to King, to secure the payment of $1300, of which $250 was to be paid within one year, and the residue in four annual instalments. In June, 1829, Lampman let a portion of his farm to Lane for the term of two years, at a rent of $35 per. annum ; Lane to be entitled to the grain in the ground at the expiration of the lease. On the 23d September, 1829, King filed a bill in equity to foreclose the mortgage, not making Lane a party to the suit, and in December, 1829, obtained an order of sale containing a direction for the delivery of the mortgaged premises to the purchaser. In February, 1830, the premises were sold under the order, and King became the purchaser, who put a tenant into possession. At the time of the entry of the tenant of King, there was a crop of rye in the ground on that portion of the farm let to Lane, and when the grain was fit for harvesting, Lane entered and cut and carried away the grain, for the doing of which King sued him in trespass. Lane knew of the mortgage at the time he took his lease, and in the autumn of 1829, was warned by King that he had better not sow any grain on the farm. The jury under the charge of the court, found a verdict for the plaintiff; whereupon a case was made, and stipulation entered into that if this court should be of opinion that King was entitled to recover, judgment should be entered in his favor for $40 damages and $30 costs ; and if not, that judgment should be entered for Lane for $30 costs.

*Adams & Van Vleck*, for plaintiff in error.

*Van Dyck & Bronk*, for defendant in error.

*By the Court*, SUTHERLAND, J. The question in this case is whether the lessee of a mortgagor is entitled, as against the mortgagee, to the crops growing on the mortgaged premises at the time of the foreclosure and sale, the mortgagee having become the purchaser. In England the mortgagee may sustain an action of ejectment against the mortgagor or any one claiming under him, by title *subsequent* to the mortgage, without any notice to quit; they are considered mere tenants at will. *Keech* v. *Hall*, Doug. 21. *Moss* v. *Gallimore*, id. 269. Powell on Mortgages, 205, 6, chap. 7. In this state, however, it has been held that a *mortgagor* is entitled to notice to quit before he can be treated as a trespasser, on the ground that there is an implied consent and agreement between him and the mortgagee, that the former may continue to occupy the premises. *Jackson* v. *Longhead*, 2 Johns. R. 75. *Jackson* v. *Fuller*, 4 Johns. R. 215. *McKercher* v. *Hawley*, 16 Johns. R. 289. A *purchaser* of the interest of the mortgagor, or a lessee under him, or any third person, stands upon the same footing here as in England, and is not entitled to notice to quit from the mortgagee. There is no privity of contract or estate between the mortgagee and such third person—as to him they are trespassers. 4 Johns. R. 215. 16 id. 289. 20. id. 61. The English doctrine, therefore, in relation to the rights of a mortgagee against a mortgagor, or his grantees or assignees, is entirely applicable to this case.

In *Keech* v. *Hall*, Doug. 21, already referred to, the mortgagee brought an action of ejectment against a tenant, who claimed under a lease from the mortgagor, given after the mortgage, without the privity of the mortgagee. Lord Mansfield in delivering the opinion of the court, said, " On full consideration we are all clearly of opinion, that there is no inference of fraud or concert against the mortgagee to prevent him from considering the lessee of the mortgagor as a wrong doer. " The question turns upon the agreement between the mortgagor and mortgagee; when the mortgagor is left in possession, the

ALBANY,
Jan. 1832.

Lane
v.
King.

true inference to be drawn is an agreement that he shall pos-sess the premises, at will, in the strictest sense, and therefore no notice is ever given to quit, *and he is not even entitled to reap the crop as other tenants at will are, because all are liable to the debt,* on payment of which the mortgagee's title ceases. *The mortgagor has no power, express or implied, to let leases not subject to every circumstance of the mortgage ; the tenant stands exactly in the situation of the mortgagor.*

This court, in *M'Kercher* v. *Hawley,* 16 Johns, R. 292, also held that the relation subsisting between the mortgagor and mortgagee, did not imply a right on the part of the mortga-gor to lease. The mortgagor, therefore, in giving a lease be-comes as to the mortgagee, a disseisor ; vide also *Jackson* v. *Hopkins,* 18 Johns. R. 487; *Jackson* v. *Dickerson,* 6 Cowen, 147; Woodfall, 237 ; and if during the disseisin, he should cut down the grass, trees or corn growing on the land, the dis-seisee after re-entry, may have an action of trespass *vi et armis* against him for the trees, grass or corn ; for after re-entry, the law, as to the disseisor and his servants, supposes the free-hold always to have continued in the disseisee, though per-haps trespass *vi et armis* would not lie against the lessee, for the fiction of law shall not by relation make him a wrong doer *vi et armis,* who comes in by color of title, because *in fictione juris semper æquitas existat.* Lifford's case, 11 Coke, 51. But though the lessee shall not be treated as a trespasser, still if he cuts the grass and trees, or sows the land and cuts and carries away the crops, they may be recovered by the disseisee after re-entry; the re-entry by relation revests *the property in him,* as well for the emblements as the freehold, and equally against the feoffee or lessee of the disseisor, as against the dis-seisor himself, though it will not, as against a person coming in by color of title give him an action of trespass *vi et armis.* 11 Coke, 51. Dyer, 31, 173. Powell on Mortgages, 213, 14, chap. 7. Mr. Powell observes, that as to *emblements* there is a distinction between tenants who have particular estates that are uncertain, defeasible by the act of the parties, or by the act of God, or those who have particular estates uncertain— defeasible by a right *paramount;* for in the latter case, he that hath the right *paramount,* shall have the emblements. The

*mortgagee* undoubtedly, as against the mortgagor and his grantees, has the paramount right. Mr. Powell considers the right of mortgagee to emblements as against the lessee of the mortgagor, as necessarily resulting from the doctrine established by Lord Mansfield, in *Keech* v. *Hull*, Doug. 21, that a mortgagor has no right to lease; he observes, that he can see no ground on which the case of such lessee, as to emblements, can be distinguished from any other tenant under a *tortious title ;* for if he be considered a wrong doer as to his occupation of the premises, he cannot be considered in a different character as to the emblements, nor can there be any ground to imply a consent to *cultivate* the property, when no implication is admitted of a consent to *occupy* it. Jacob's Law Dict. Emblements. 4 Rep. 21.

This reasoning appears to me to be conclusive. The plaintiff, therefore, according to the stipulation of the parties in the case, is entitled to judgment for forty dollars damages and thirty dollars costs.