## SHEPARD *vs.* PHILBRICK.

The purchaser of mortgaged premises sold pursuant to a statute foreclosure is entitled to crops sown by the mortgagor and growing on the land at the time of the sale.

*So held* where one who had purchased the crop before the foreclosure on execution against the mortgagor, brought trover against the purchaser under the sale on foreclosure, who having entered had harvested and carried away the crops. *See note (b.)*

ERROR to the Onondaga C. P. to review a judgment of that court in a cause arising on appeal from the judgment of a justice of the peace. Philbrick brought trover against Shepard for a quantity of wheat growing, which the defendant, as alleged converted, by cutting and drawing it away.

On the trial in the C. P. the following facts appeared in evidence. The wheat in question was sown by one Wright upon land then in his possession, in the summer or autumn of 1842. The plaintiff claimed title to it by a purchase on an execution against Wright issued by a justice of the peace. The judgment was duly proved and the execution was delivered to a constable the 3d day of August, 1842, who levied on the wheat on the 14th day of October following, and having duly adver tised, sold it on the 30th of the same month, the plaintiff being the purchaser and the wheat having then just come up.

The defendant harvested the wheat in August, 1843. His title was as follows: In February, 1841, Wright mortgaged the farm on which the wheat grew to Green, to secure $469,62, by

ten annual instalments with annual interest. On the 30th March, 1843, the farm was sold under the mortgage, pursuant to advertisement, according to the statute, and Green the mortgagee became the purchaser. The mortgage had been duly recorded, and the proceedings on the foreclosure were regular and were duly proved. On the 5th day of April, 1843, Green sold and conveyed the farm to Park, who on the 28th day of May following sold and conveyed it to the defendant, who went into possession in the spring of 1843, and was in possession when he harvested the wheat.

The court was of opinion that the plaintiff's was the preferable title, and so charged the jury, who found for the plaintiff $36,45 damages. The defendant excepted and brought error here.

*Gardner & Burdick*, for the plaintiff in error.

*D. Gott*, for the defendant in error.

*By the Court*, JEWETT, J. A growing crop, raised annually by labor and cultivation is, as it respects an execution against the owner, a mere chattel, and subject as such to be taken and sold under it. (*a*) A purchaser on such sale acquires the rights and interest of the defendant in the execution to the crop, with the right of ingress, egress and regress for the purpose of gathering and carrying it away. ( *Whipple* v. *Foot*, 2 *John. Rep.* 118 ; *Stewart* v. *Doughty*, 9 *id.* 112.)

The title and interest of Wright in the crop of wheat in question growing upon the mortgaged premises, ·was entirely subject to and liable to be divested by a foreclosure and sale under the mortgage to Green. The crop as well as the land was a security for the mortgage debt ; and on the sale of the land under the mortgage passed to the purchaser, that being a paramount title to Philbrick's title acquired under the execution. (*Powell on Mortgages*, 1*st Am. ed. from 4th Lond. ed.* 207 *to* 210 ; *Lane* v. *King*, 8 *Wend.* 584.)

Shepard *v.* Philbrick.

Shepard having acquired the title to the mortgaged premises, which carried with it a title to the crop growing, and having acquired actual possession of the premises, showed a perfect title to the wheat in controversy as well against Wright as Phil brick, the latter having no greater right or interest in the crop than the former would have had, if it had not been sold on execution against him prior to the sale under the mortgage. There must be a *venire de novo.* (*b*)

Judgment reversed.

(*b*) The English doctrine is well settled in conformity with the point here decided, as appears from the citations from Powell on Mortgages. See also *Keech* v. *Hall,* (*Doug.* 21.) But in England the mortgagee may bring ejectment and the mortgagor is not entitled to notice to quit. In this state it has been long settled that a notice to quit is necessary; (*Jackson* v. *Laughhead,* 2 *John.* 75; *Jackson* v. *Fuller,* 4 *id.* 215; *Jackson* v. *Hopkins,* 18 *id.* 487;) and now by the Revised Statutes ejectment cannot be maintained at all until foreclosure. (*vol.* 2, 312, § 57.) In *Lane* v. *King,* referred to in the text, the growing crops were raised by a *tenant* of the mortgagor, and the decision was placed upon the ground that such tenant was *not in privity with the mortgagee.* If the mortgagor, *before forfeiture,* should put in a crop, and a third person should become a purchaser of such crop, also before any default in paying the mortgage debt; and before the crop was harvested a de fault should occur and the mortgagee should obtain possession under a foreclosure and should enter and take the crop, a question would arise which perhaps is not here decided; for in the principal case it will be seen that a forfeiture must have occurred before the wheat in question was sown. There must have been a default in the second instalment payable in February, 1842, to have warranted a sale upon a foreclosure in March, 1843.