## DANIEL BLOOM *vs.* JOSEPH WELSH.

1. Growing crops may be levied upon and sold as chattels under a writ of *fieri facias de bonis,* and the purchaser under such sale acquires the right of leaving the crop upon the soil until its maturity, and also the privilege of entering upon the soil to gather and take away the crop.

2. A judgment binds the land of the defendant from the time of its entry. But neither the judgment nor the levy of an execution upon the land creates a lien upon the growing crops.

3. Notwithstanding such judgment and levy upon the land, the growing crops may be sold, or may be levied upon by virtue of a subsequent execution; and such sale or levy will be valid and operative, provided the crops are severed during the continuance of the defendant's title, and before the sale and conveyance of the land under the judgment.

4. The purchaser of land under a sheriff's sale acquires, by virtue of the conveyance, a legal title to the growing crops then upon the land, against a previous purchaser of the crops from the defendant in execution; such purchase of the crops being made subsequent to the entry of the judgment by virtue of which the land is sold.

---

This action was brought in the Hunterdon Circuit Court, and was tried at April Term, 1857. The jury rendered a

verdict for the plaintiff, and assessed his damages at $156.75. Judgment on the verdict was suspended, and, on a state of the case agreed upon by the parties, the cause was submitted to the Supreme Court for an advisory opinion. The facts appear in the opinions delivered in this court.

The cause was argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER, HAINES, and VREDENBURGH.

*Richey* and *Beasley*, for plaintiff.

*Wurts*, for defendant.

The CHIEF JUSTICE. In an action of trover to recover the value of a lot of winter grain, the plaintiff showed title by purchase of the growing crop from John H. Sinclair, on the 5th of November, 1855. At the time of the sale, the farm of Sinclair, upon which the grain was growing, was under execution by virtue of sundry judgments, and, on the 22d day of the same month of November, was sold, by the sheriff, to Welsh, the defendant, and conveyed to him, by deed, on the 10th of December. No levy had been made upon the grain. The defendant claimed the crop, as the purchaser of the land upon which it was growing. Before the sheriff's sale, the defendant had notice of the sale of the growing crop by Sinclair to the plaintiff, and bid for the land, as the evidence shows, with no expectation of purchasing the growing grain. His claim to the grain under the purchase of the land was an after-thought. The land sold for enough at the sheriff's sale to satisfy all the executions, and leave a surplus to the defendant in execution. The *bona fides* of the sale of the grain by the defendant in execution to the plaintiff is not questioned.

The justice of the case is clearly with the plaintiff. He

purchased and paid for the grain. The defendant purchased and paid for the farm with full knowledge that the grain had been sold, and with no expectation that the sheriff's deed would convey the crop. The execution creditors were in no wise prejudiced. If the defendant holds the grain, it must be by virtue of the strict rule of law. This view of the case was presented so strongly by the evidence upon the trial, that I was unwilling to withdraw the question from the jury, under the belief that there existed some legal principle upon which the plaintiff's title might be sustained. But upon a careful review of the case, I am unable to find any principle upon which his claim to the grain can be supported, and am satisfied that the ruling at the circuit was erroneous.

It will not be questioned, as a well-settled rule of law, that a conveyance of real estate, either by the owner or by the sheriff, under a sale by judgment and execution, carries with it the growing crops as an incident, unless there be an express reservation in the deed. *Terhune* v. *Elberson*, 2 *Penn.* 726; *Hendrickson* v. *Ivins*, *Saxton* 562; *Foote* v. *Colvin*, 3 *Johns. R.* 222; *Austin* v. *Sawyer*, 9 *Cowen* 40; *Pattison* v. *Hull*, 9 *Cowen* 754.

And this will be the case, although there be an express agreement between the vendor and purchaser that the crops are reserved, and are not to pass by the deed. Parol evidence cannot be admitted to contradict or vary the terms of the deed. But in such case equity will grant relief. *Hendrickson* v. *Ivins*, *Saxton* 562.

It is equally clear that a notice to the purchaser of the real estate of a previous sale of the growing crops by the defendant in execution, and a misapprehension by the purchaser of the extent of his claim under the sheriff's sale, cannot impair the extent of his legal rights under the deed from the sheriff. However this consideration may affect the equity of his claim, it cannot prejudice his legal rights.

The only question in the case then is, did the defendant

by his purchase of the land under the sheriff's deed, acquire a legal title to the growing crops, as against a previous *bona fide* purchaser of the crops from the defendant in execution, such purchase being made subsequent to the rendition of the judgment upon which the execution issued. At common law, growing crops, raised annually by labor and cultivation, are personal property. As such, they go to the executor, and not to the heir. *Toller on Executors* 150; *Ram on Assets* 186; 1 *Williams on Executors* 596; *Matthews on Executors* 26.

They may be sold and conveyed as chattels, by parol. A contract for their sale is not a contract for the sale of an interest in land under the statute of frauds and perjuries. *Evans v. Roberts*, 5 *Barn. & Cr.* 829; *Jones v. Flint*, 10 *Ad. & E.* 753; *Austin v. Sawyer*, 9 *Cowen* 39; *Green v. Armstrong*, 1 *Denio* 550; 2 *Greenl. Ev.*, § 271.

Like other chattels, they may be taken in execution and sold under a *fi. fa. de bonis*. *Peacock v. Purvis*, 2 *Brod. & Bing.* 362; *Eaton v. Southby*, *Willes* 131; *Sewell's Sheriff* 235; *Watson's Sheriff* 180; *Whipple v. Foot*, 2 *Johns. R.* 418; *Stewart v. Doughty*, 9 *Johns. R.* 180; *Westbrook v. Eager*, 1 *Harr.* 81.

And the purchaser of growing grain under such executions acquires the right of leaving the grain upon the soil until its maturity, and also the privilege of entering to gather and take away the crop.

So the owner of the soil may sell the growing crops as chattels. Such sale will operate as a severance, and the purchaser of the crop will hold against a subsequent purchaser of the land upon which it is growing, from the owner. *Westbrook v. Eager*, 1 *Harr.* 81; *Stewart v. Doughty*, 9 *Johns. R.* 108; *Austin v. Sawyer*, 9 *Cowen* 39.

In applying these principles to the case under consideration, it is clear that, if the sale of the growing crops had been made previous to the entry of the judgment under which the land was subsequently sold, the purchaser of the crops would have held them by a valid title. The sale

Bloom v. Welsh.

of the crops would have operated as a severance, and would have vested a complete title in the purchaser, with the right of entering on the land to gather and take them away. The subsequent levy on the land must have been made subject to this encumbrance, and the encumbrance would continue on the land in the hands of the purchaser under the execution. The sheriff's deed for the land would not, under such circumstances, vest in the grantee any title to the growing crops, because at the date of the judgment there had been a severance. The crops were no longer an incident of the realty, and would not pass by a conveyance of the land. But here the sale of the growing crops was made subsequent to the entry of the judgment, and it remains to inquire what effect, under our statutes, the lien of the judgment upon the land, and the subsequent sale and conveyance thereof by the sheriff, had upon the title to the growing crops.

A judgment binds the land of the defendant from the entry of the judgment, but it does not bind chattels. *Nix. Dig.* 722, § 2. Nor does a levy of an execution upon the land create a lien upon the growing crops, so far, at least, as to prevent a sale of them by the defendant to a *bona fide* purchaser, or a levy upon them by virtue of a subsequent execution. If the crop be gathered and removed before the sale of the land, the case is entirely free from difficulty. The judgment creditor may at any time, if he see fit, levy as well upon *the growing crops* as upon the land, and thus acquire a legal right to them. But in the absence of such levy, the lien of the judgment upon the real estate will not interfere with the disposition of the growing crops by the defendant in execution, provided they are severed during the continuance of the defendant's title. The purchaser of mortgaged premises, sold under a decree of foreclosure and sale, is entitled to the crops sown by the mortgagor and growing at the time of the sale, as against a purchaser of the crops from the mortgagor or under an execution against the mortgagor. *Howell*

v. *Schenck*, 4 *Zab.* 90; *Shepard* v. *Philbrick*, 2 *Denio* 174. But the title of the mortgagee is quite distinct in character from that of the judgment creditor. He has a legal estate in the mortgaged premises; he may recover in ejectment; the crops as well as the land are security for the mortgage debt. Neither the mortgagor nor his lessee is entitled to emblements, as against the mortgagee. *Coote on Mort.* 343. But the lien of a judgment upon the land has no such efficacy.

In *Stambaugh* v. *Yates*, 2 *Rawle* 161, it was held, by the Supreme Court of Pennsylvania, that where, after an execution was levied upon land, grain was sown upon it, which was levied on and sold at the suit of another creditor, and the land was subsequently sold under the first *fieri facias*, such sale of the grain was an implied severance, and the grain did not pass by a sale of the land. And the principle of that case is recognized in *Bear* v. *Bitzer*, 16 *Penn. St. R.* 178.

It was held, in the latter case, that if the sale of the land was made while the grain remained the property of the judgment debtor, it passed to the sheriff's vendee, as appurtenant to the land; and if the right of the respective creditors rested alone upon the legal effect of the levy upon the crops and the land, respectively, these decisions are in accordance with sound principle.

But, by the provisions of our statute, making lands liable to be sold for the payment of debts, (*Nix. Dig.* 723, § 8,) the sheriff by whom lands are sold under execution, is required to make to the purchaser as good a deed as the defendant in execution could have made for the same at the time of rendering judgment; which deed, the statute declares, shall vest in the purchaser as perfect an estate in the premises as the defendant in execution was entitled to at the date of the judgment, and as fully as if he had himself sold the land and received the purchase money. It was held in *Den* v. *Steelman*, 5 *Halst.* 199, that the sheriff's deed takes effect only from delivery, and

that no estate vests in the purchaser until that time, but that the purchaser, under the provision of the statute, takes as good an estate as the defendant had at the time of the judgment; so that no subsequent lien or alienation should have effect. To give effect to this provision of the statute, it must be held that the lessee or vendee of the defendant in execution (the lease or sale being subsequent to the judgment) can have no right to the way-going crop, as against the purchaser of the land at the sheriff's sale. To permit the defendant in execution to assign the way-going crop upon land subject to judgment would enable him to transfer to others rights not vested in himself, and would impair the extent and efficacy of the security which the legislature designed to confer upon the judgment creditor. The relation of the sheriff's deed to the date of the judgment cannot operate to avoid any use or alienation of the growing crops by the defendant in execution prior to the sheriff's sale. As has been said, the judgment creates no lien upon the growing crops. They may be lawfully used or aliened by the tenant, provided they mature and are severed during the continuance of his title. But if they continue upon the land at the time of the sale and conveyance by the sheriff, there being then no severance in fact, and no severance in law prior to the entry of the judgment, the title to the crops passes with the conveyance of the land. This being the position of the crops now in controversy, they passed to the defendant under the sheriff's deed. The plaintiff has no legal title to them.

Let the Circuit Court be advised that the verdict should be set aside, and judgment of non-suit entered.

ELMER, J. Growing crops are chattels, and pass by a parol sale, (*Westbrook* v. *Eager*, 1 *Harr.* 81,) but they are so far annexed to the soil that they pass by a deed which does not except them. *Terhune* v. *Elberson*, 2 *Penn.* 726. A deed from Sinclair to the defendant. made at the time

the sheriff's deed was made, would not have conveyed the grain, because it had been previously sold to the plaintiff. But by the express provisions of the 8th section of the act making lands liable to be sold for the payment of debts, (*Nix. Dig.* 723,) a sheriff's deed relates back to the date of the judgment, and it is declared that it shall vest in the purchaser as good and perfect an estate as the defendant in execution was entitled to at and before the judgment, as fully and to all intents and purposes as if the said defendant had sold the lands and made the deed. The title of the defendant was therefore paramount to that of the plaintiff, and the case comes within the ruling in the case of *Howell* v. *Schenck*, 4 *Zab.* 89.

It was held by the Supreme Court of Pennsylvania, in the case of *Stambaugh* v. *Yates*, 2 *Rawle* 161, that where there was a judgment and *fi. fa.* against land, and another creditor obtained an execution against goods, upon which crops growing on the land were sold, and then the land was sold by virtue of *venditioni exponas*, that the crops passed by the first sale, and the court said the defendant might have sold them himself. But the Pennsylvania statute does not make the sheriff's deed relate back, as ours does. It was held in *Bear* v. *Bitzer*, 16 *Penn. St. R.* 175, that when the crops have not been previously sold, the sheriff's deed will pass them.

The facts given in evidence, showing that the defendant knew, before he purchased at the sheriff's sale, that the plaintiff had bought the grain, and that the sale paid off all the executions against Sinclair, cannot affect the defendant's title. The plaintiff could not have been permitted to show, if such had been the fact, that the grain was verbally reserved, because the deed must speak for itself, and cannot be changed by parol evidence. *Gibbons* v. *Dillingham*, 5 *Eng. Ark. R.* 9 ; *Howell* v. *Schenck*, 4 *Zab.* 89. The defendant's knowledge of a previous sale of the grain did not prevent him from being a purchaser, or make his rights, as such, different from those of any

other person. That the property paid off all the execu-tions, may serve to show that the sale by Sinclair of the grain was not fraudulent. But the defendant's title does not depend upon that of the plaintiff's being fraudulent or otherwise invalid of itself, but upon the law, which makes the sheriff's deed relate back to the date of the judgment, obviously for the purpose of thereby cutting off all subse-quent alienations and encumbrances. If Sinclair had made a deed to the plaintiff for a fair and valuable consideration, and the plaintiff had had no actual knowledge of the judg-ment, it cannot be doubted, I think, that the title under the sheriff's deed would be paramount to the other, and super-sede it entirely. A parol sale of the grain cannot, I think, give any better claim than a conveyance by a deed would.

I am therefore of opinion that, upon the facts stated, the plaintiff cannot maintain his action, and that the Circuit Court should be advised to order judgment of non-suit.

Justices HAINES and VREDENBURGH concurred.