NATHANIEL WILLIAMS and the WALTON & WHANN COMPANY
v. WILLIAM A. COCHRAN, ET. AL.

*Rents—Apportionment of.*

At common law the rent follows the reversion.

In the case of a sale of land in foreclosure of a mortgage under a decree of the Cir-
cuit Court of the United States the purchaser is entitled to all rents accruing
after the day of sale, and the statute for the apportionment of rents in the case·
of sheriff's sales does not apply.

(*New Castle, May, 1888.*)

ATTACHMENT FIERI FACIAS.

Sheriff returns :—Laid in' the hands of Robert R. Cochran,.
March 30, 1888.

Robert R. Cochran the garnishee above named makes answer·
to the above stated attachment as follows :

On the 19th day of March, 1888, in a cause then pending, in·
the Circuit Court of the United States for the District of Delaware,.
in which cause Catherine H. Pascault was plaintiff, and said Wil-
liam A. Cochran and Thomas F. Bayard, trustee, were defendants,
being No. 107 in Equity, and being an action for the foreclosure of·
a certain mortgage given by said William A. Cochran and wife to·
said Catherine H. Pascault, the said Court adjudged and decreed,.
*inter alia.* That said mortgage was a lien upon the lands and pre-
mises therein described, situate in said county, that said defendant,.
William A. Cochran, should on or before the first day of May,.
then next ensuing pay into said Court the moneys secured to be
paid in said mortgage together with accrued interest thereon and
costs of said action, or in default of such payment with said limited
time said motgaged premises should be sold by a trustee appointed
by said Court to make such sale and to make return thereof to said
Court, and that, upon confirmation of said sale by said Court and
the compliance with the conditions of said sale by the purchaser, the:
said trustee should execute and deliver to the purchaser at said sale·

a good and sufficient deed, conveying to said purchaser in fee simple the said mortgaged premises with the improvements and appurtenances thereto belonging free, clear, and discharged of and from all liens and incumbrances created or suffered by the said defendant William A. Cochran excepting a certain mortgage held by Thomas F. Bayard, trustee, and free, clear and discharged of and from all claim of the said William A. Cochran or any person or persons claiming under him, thereon or thereto, by way of equity of redemption or otherwise (except as aforesaid) :—and the said William A. Cochran and all persons claiming under him should be thenceforth absolutely debarred and foreclosed of and from any such claim or demand (except as aforesaid).

That thereafter, said William A. Cochran having failed to pay unto said Court the said moneys in compliance with said decree said premises in said decree mentioned were, in pursuance of said decree, on the fifth day of June in said year duly sold by said trustee at public auction to said Catherine H. Pascault.

That thereafter, on the twenty-first day of June A. D. 1888, said sale was by said Court approved and confirmed, and it was ordered and decreed by the Court that the trustee do execute and deliver to the said Catherine H. Pascault said purchaser, a deed conveying to her in fee simple the said premises with the improvements and appurtenances thereunto belonging, free, clear and discharged of and from all liens and incumbrances created or suffered by the said defendant William A. Cochran, excepting the said mortgage held by the said Thomas F. Bayard, trustee, and free, clear and discharged of and from all claim of the said William A. Cochran, or any person or persons claiming under him thereon or thereto, by way of equity of redemption or otherwise.

That thereafter on the——————————day of June, A. D., 1888, said Court awarded its writ of possession to said Catherine H. Pascault for putting her in possession of said premises the tenant thereof being he the said Robert R. Cochran, said garnishee, claiming to hold the same as tenant under the said defendant Wil-

liam A. Cochran by lease, or contract posterior to the time whereon said premises were sold as aforesaid.

That thereafter on the————————day of A. D., 1888, said trustee executed and delivered to the said Catherine H. Pascault, said purchaser a deed conveying to her in fee simple the said premises, in accordance with said decrees of said Court, to which deed said Robert R. Cochran, said garnishee, asks leave to refer and to make a part of this his answer.

That since said sale said Catherine H. Pascault hath continued the owner and possessor of said premises until the twenty-second day of January A. D., 1889.

That from the twenty-fifth day of March 1887 to the twenty-fifth day of March 1888, he the said Robert R. Cochran was and continued the tenant of said premises, and so hath continued tenant of said premises to the present time as tenant from year to year.

That on the thirtieth day of March, according to the return of the Sheriff, a writ of attachment *fieri facias* was served upon him issuing out of the said Superior Court upon a judgment recovered in said Court by Nathaniel Williams against said William A. Cochran et al., being writ No. 75, Att. Fi. Fa. to May T. 1888, upon which judgment there is an unpaid balance of——————— dollars; which said writ was intended to, and did in fact, stop in his hands the rent if any, due the said William A. Cochran, as his landlord and lessor.

That he the said Robert R. Cochran had, before the service of said writ as aforesaid, to wit about the third day of October A. D. 1887 planted a wheat field upon said premises and farm, one-half of the crop from which, thereafter maturing and harvested, amounting to about four hundred bushels, being the landlord's rent and share thereof, he the said Robert R. Cochran hath sold for four hundred dollars, which proceedings of which wheat he now holds subject to said attachment. That he also, on or about the twenty-seventh day of April A. D. 1888, planted about forty acres of said

farm to corn, the crop from which when harvested amounted to about one thousand bushels, which corn is now in the crib upon said farm, and one-half thereof belongs to his landlord as rent.

That said Catherine H. Pascault by virtue of said decree of said Circuit Court and the sale, proceedings and deed of said trustee thereunder to her made as aforesaid, claims to be entitled to said shares of said wheat and corn crops, so held by him the said Robert R. Cochran as subject to said writ of attachment or to her proper and proportionate part thereof, as the owner and landlord of said farm and premises.

That the said Robert R. Cochran, said garnishee, is unable to determine the person legally entitled to said rent, or the proportions thereof if the same should be apportioned, and prays said Court to determine whether said Nathaniel Williams said plaintiff in said attachment, or said Catharine H. Pascault is entitled to the said rent and to what proportions thereof, if the same should legally be apportioned.    And he, the said Robert R. Cochran holds said rent subject to the order of said Superior Court.

(Signed)    ROBT. R. COCHRAN,<br>and sworn to.

*Davis* and *Biggs* for plaintiffs.

1. The way-going tenant is entitled to the wheat crop in this State by the general custom.

*Templeman v. Biddle*, 1 Har., 522; *Thompson v. McClary, et. al.*, 1 Har., 520.

Therefore the growing wheat being a crop of the year ending March 25, 1888, and the premises being sold in the succeeding year are not rents subject to apportionment in contemplation of Revised Code, p. 680, Sec. 2 &c., and the purchaser could not obtain any title by virtue of the same.

2. The Statute in Revised Code, p. 680, Sec. 28 &c., which directs the apportionment of rent growing due in cases of execution

sales applies to all sales whereby it is sought to convert the real estate security into money by the creditors, and the same must have been the intention of the legislators when they passed said Chapter 111 as by reading the whole of said chapter, will appear. Section 26 of said chapter refers to the sheriff or other officer making such sale, that the " other officer " in this case was William C. Spruance, Esq., trustee.

That in the third paragraph of Section 28 of said chapter, it is declared that any " fair defence " which would have availed against the person as whose property the premises were sold, shall avail against the purchaser ; and as the landlords interest had been garnisheed in the hands of the tenant who made his answer thereto long before said sale, the purchaser took the premises with notice that the rents had been attached ; that said garnisheement is a fair defance to any claim of the purchaser to any part of said rents, because he could take no more interest than said William A. Cochran had therein at the time of said sale.

As to a fair defence, see 3 Houston, (Del.), p. 10 &c.

3. Rent in arrear or growing due may be attached in the hands of the tenant.

See Revised Code, 716, Sec. 67 ; *Curry v. Davis*, 1 Houston, 603 ; *Williams v. Cleaver*, 4 Houston, 453.

The share in these crops was rent, and therefore subject to attachment.

4. But for the above statute the purchaser would be entitled to no interest in said wheat and corn crops ; because, first, they are considered personalty and subject to execution or attachment— crops whether growing or standing in the field ready to be harvested, are when produced by annual cultivation, no part of the realty.

Freeman on Ex., Sec. 13, Notes on page 149 ; Sharswood Black, Book 2, page 122 & note ; *Whipper v. Foot*, 2 Johnston, N. Y. Com. Law, 418, See Note ; *Austen v. Sawyer*, 9 Cowen N. Y.

Com. Law, 39; *Westbrook et. al. v. Eager*, 16 N. J. Law, 81; *Cox v. Godsalve*, 6 East, 603, Note; *Parker v. Staniland*, 11 East, 362.

It is equally well settled that said crops may be seized and sold under execution.

*See Freeman on Ex.*, page 150, Notes; *Cassidy v. Rhodes*, 12 Ohio, 88; *Hartwell v. Bissell*, 17 Johnston, Com. Law. N. Y., 128.

Corn is personal estate, and may be sold on execution as other personal estate.

*Pennhallow v. Dwight*, 7 Mass., 35; *Hartwell v. Bissell*, 17 Johnston, Com. Law. N. Y., 128.

A growing crop, raised annually by labor and cultivation, is as respects an execution against the owner, a mere chattel and subject to be taken and sold.

*See Freeman on Ex.*, p. 150 & Notes; *Stewart v. Doughty*, 9 Johnston, 108 N. Y. Com. Law.

Secondly. Because a mortgagee out of possession has no title to the land, but only a chattel interest, or chose in action.

A mortgagor in possession is the real owner of the land, the mortgage is a mere security for the payment of the money, and the mortgagee before foreclosure has but a chattel interest.

*Cooches lessee v. Gerry*, 3 Harrington, 280; *Hogsett v. Ellis*, 17 Michigan, 351.

Mortgages are, more especially in this State, to be considered *merely* in the light of securities for the payment.

*Fox v. Wharton*, 5th Del. Chancery, 200; *Robinson v. Harriss*, lessee, 3 Harrington, 283. Note.

Such being the case, the mortgagee under foreclosure can sell no more than any other lien creditor, viz: All the interest the defendant had therein, which could not include the crops previously disposed of by the law.

On a sale of real estate under proceedings in partition growing crops of grain do not pass thereby to the purchaser.

*Honts v. Showater*, 10 Ohio State, 125; *Shurman v. Willetts*, 42 N. Y. Appl., 146.

The reservation of the crops could be in effect only a notice to the purchaser that they had been disposed of.

Which notice in this case was made by the public record of the attachment and answer, previous to the sale in said foreclosure proceedings.

When lands subject to a mortgage are sold under a decree of foreclosure the emblements of a lessee of the mortgagor are protected, and do not pass to the purchaser.

*Cassidy v. Rhodes,* 12 Ohio, 88 ; *Beggs v. Thompson,* 2 Ohio, 95.

*H. H. Ward* for the mortgagee and purchaser.

This is not a case for apportionment of the rent in question. My reasons are as follows :

1.   There is a clear distinction in kind between *Judicial* Sales and *Execution* Sales of real property.

*Rorer on Judicial Sales,* Chapters I & II and particularly Secs. 2,7, 12, 15, 17, 23, 26, 30, 31, 41, also Secs. 46, 50, 51 & 52.

" Judicial sales occur in probate and in chancery proceedings for partition of real estate, when a division of the property can not be made in kind ; in guardian and administration sales of land in probate ; *in mortgage foreclosures by equitable proceedings &c.,* and we may add, whenever a right or proceeding is enforced, by a sale made by a judicial order or decree, under direction of the Court, as contra-distinguished from sales on execution."

The most common sort of execution sale is that by the Sheriff upon execution.

2.   The sale under which Catharine H. Pascault bought the farm in question was in foreclosure of mortgage proceedings in Equity, in the Circuit Court of the United States for the District of Delaware ; William C. Spruance, Esq., the Trustee of the Court to make sale, formally returning his sale, and the Court by special

decree confirming the sale and ordering the deed to be made by the Trustee to the purchaser.   Thus the sale to Catharine H. Pascault was a judicial, as distinguished from a Sheriff's or execution sale. The proceedings, excepting the deed, which strictly followed the decree, are fully set forth in the special answer of the garnisheed tenant, so as to show the character of this sale.

3.   Section 28, Chapter III, Rev. Code, applies only to execution or Sheriff sales of land.

Sec. 28, Ch., III Rev. Code and adjacent Sections.

This "provision" for apportionment of rent in case of Sheriff's sales "extends no further."

*Wilson v. Delaplaine* 3 Harr., 499, 500.

4.   The sale to Catharine H. Pascault, having occurred on June 5th, 1888, (and being thereafter duly confirmed and deed executed,) before the crops were cut and the rent was due, she is entitled to the whole rent, without apportionment, *Because* "The rent follows the reversion.   The reversion is vested in the purchaser by virtue of that sale, at the time when the rent falls due.   For rent is indivisible.   None of it is due until the expiration of the time during which it is accruing."

*Wilson v. Delaplaine,* 3 Harr., 499, 500.

5.   Rent is indivisible ; during the time it is accruing, none of it is due.

*Wilson v. Delaplaine, Supra.*

The rent of the Cochran farm in question, being payable in kind, was accruing during the growing and maturing of the crops, but payable or demandable, only at harvest time ; that is to say, the rent was due after the reversion was vested by sale on foreclosure in Mrs. Catharine H. Pascault, and therefore, being indivisible, and following the reversion, was payable, as far as the former owner is concerned or any one claiming under him, in its entirety, to her.

6. It is to be borne in mind, also, that in this case no question is raised between the right of the tenant, Robert R. Cochran, and of Mrs. Catharine H. Pascault, for such tenant's share of the growing crops. The contention is simply between Mrs. Pascault, a mortgagee, who afterward purchased the land at the foreclosure sale, and the mortgagor, William A. Cochran. In this case, also, the land, upon its sale, failed to pay the debt secured thereby, by many thousand dollars, as appears by the deed referred to in the special answer. Under such circumstances, it is a well settled and equitable principle that "the purchaser of mortgaged premises, upon a foreclosure and sale thereof, is entitled to the growing crops or emblements thereon as against the mortgagor."

*Aldrich v. Rylands,* 1 Barbour, N. Y. Ch., 613 &c.; Followed by 9 Mo. App. 3, & other courts.

The mortgage of lands is only by way of security for payment of the debt. While the debt is unpaid, the land and its growing products are equally the security for the debt. The mortgagor cannot, either legally or equitably, claim the land, or *his share* of the growing products, after sale upon foreclosure for an insufficient sum, as against any purchaser at such sale, and much less as against the loss-suffering mortgagee who becomes such purchaser. Even during the continuance of the mortgage, if the interest become in arrear, a mortgagee can compel the payment of the rent to himself or herself. Much more, after foreclosure and purchase by such mortgagee, when land has proven insufficient, ought such mortgagee to be able to hold the mortgagor's share of the crops growing on the land, which constitute his rent.

7. The right of creditors of the mortgagor attaching rents due him, is only co-extensive with his property therein. The springing right to collect his rent when due, was divested by the sale under foreclosure before such rent became due, and was thereby vested in the purchaser of the reversion; and the divestiture of the mortgagor a right to collect the rent, divested, *a fortiori,* the rights

of the rent attaching creditors of the mortgagor to that rent. This appears almost axiomatic.

8.    The purchaser at foreclosure sale is entitled to the crops, growing on the land at the time of the sale, in preference to the mortgagor or any one claiming under him, whose claim originated subsequently to the mortgage.    The title takes effect by virtue of the original deed; the sale carries that title, and cuts off all liens and interests created subsequent to the mortgage.

*Jones on Mortgages*, Sec., 1654; *Shepard v. Philbrick* 2 Denio, 174–6; *Lane v. King*, 8 Wend., 584; *Alrich v. Rylands*, 1 Barbour Ch. (N. Y.,) 613, above cited; *Houts v. Showalter*, 10 Ohio St., 124, 127.

This case of *Shepard v. Philbrick*, is very much to the point, and is declared by the Reporter's note to the case, to express the well settled English doctrine.

As above stated, we do not contend for the tenant's share of the growing crops.    He was afterwards continued as tenant of the premises, and all matters arranged by agreement.

As to the arguments advanced by the counsel for the attaching creditors of the mortgagor, we do not conceive that they in any respect weaken the arguments and conclusions above set forth.

(1) Sections 67, 69, Ch. 120, Rev. Code, does not expressly contemplate the attachment of rent in kind.    Its words apply readily to the conditions attending the payment of a mony rent.    The law can hardly contemplate the payment of wheat and corn, &c., " to the sheriff to be paid into Court," Section 68, first sentence.

(2) The argument that Mrs. Pascault, the mortgagee purchaser at foreclosure sale, had constructive notice of the claim of these attaching creditors, by reason of the records thereof in the Superior Court, is a very sharp two edged sword; for, upon the same principal, the record of the Pascault mortgage, the long pending suit in

the United States Court, the decree therein of March 19, 1888, all of which were before the issuing of the writs of attachment, must surely be considered like constructive notice to these attaching creditors, that William A. Cochran's, the mortgagor's, right in these growing crops was liable to be divested, before the harvesting of the crops, by sale upon foreclosure proceedings.

(3) The argument that, because a tenant is entitled by law in this State to return after the expiration of his term and harvest certain crops which he has sown the previous year, therefore the landlord's share of such crops constitute rent due the previous year, can not be sound. For the encouragement of agriculture, custom and law will not permit a tenant to lose the benefit of his toil, and will not permit another to reap what he has sown. But if words mean anything, rent is *due* when it is *demandable* or *payable*. Particularly, rent in kind, consisting of harvested grain &c., can not be conceived as *due, demandable* or *payable,* until the maturity and harvesting of the crop; for until then the rent paying medium does not exist.

(4.) The main contention of the counsel for the attaching creditors, appears to be bottomed on the third paragraph of Section 28, Ch. III, Rev. Côde. Upon this section of the Code, they contend that the attachment of the rent in Robert Cochran's, the tenant's, hands, would have been a "fair defense" which would have availed against William A. Cochran, the person as whose property the premises were sold, and that therefore the same defence shall avail against Mrs. Pascault, the purchaser."
But it is to be observed,

(1st) That this section is the one treating of apportionment of rent upon Sheriff's sales and giving remedies for the recovery of such apportionments, and that the third paragraph is expressly limited to such rent and such sales by the words, "In any action, or proceeding for *such rent &c.* As above shown, the sale before

you is not a Sheriff's sale, and the rent in question not apportionable, and hence the present is not an "action for *such rent*;"

(2) The argument based upon this section is, as applied to the law and the facts of this case, pure and simple *petitio principii*. It assumes that, at the time the rent was due and payable, Robert Cochran, the tenant, owed it to William A. Cochran, the mortgagor, and concludes that the plea of the attachments would avail against a demand for rent of William A. Cochran, and hence of Mrs. Pascault the purchaser at the foreclosure sale.  But the very point of our contention is, that under the facts of this case and the law of this State as laid down in *Wilson v. Delaplaine* and the unquestioned law of England and the other States, Robert Cochran, the tenant, owed the entire rent when due and payable, not to William A. Cochran the foreclosed mortgagor, but to Mrs. Pascault, who then was vested with the land and the reversion.  To contend that the plea of prior attachment of rent, under a writ against the mortgagor,". the right to which rent had been, before the same was due and payable, wholly divested out of the mortgagor and into the purchaser at the foreclosure sale, could be set up against the lawful demand of such ¡purchaser, is manifestly absurd.

HOUSTON, J., announced the opinion of the Court.

In the cases of *fi. fa.* attachment of Nathaniel Williams *v.* William A. Cochran et. al., No. 75, to May Term, 1888, and of The Walton & Whann Company *v.* William A. Cochran, No. 99, to the same term of this Court, and which were heard before us at the last, and were held under advisement by us until this term, full arguments in writing having in the meantime been submitted to us by the counsel in them, and which attachments were laid in the hands of Robert R. Cochran, as garnishee and tenant of William A. Cochran, to attach whatever share of the rents, if any, the latter might be entitled to in the premises in question under all the facts disclosed in the record of the cases before us, and in which

the garnishee in his answer to the respective attachments submits the question to the Court whether the plaintiffs in them, the said Nathaniel Williams, and The Walton & Whann Company, or the said Catharine H. Pascault, the purchaser of the premises under the proceedings and decrees for the sale of them in foreclosure of the mortgage in the Circuit Court of the United States for the Delaware District referred to in the record, and to what proportion of said rent, if the same should legally be apportioned; and concluding his answer in each case with the statement that he holds said rent subject to the order of this Court. There is but one answer the Court can give to this question and that is that this is no case for any apportionment of the rent in question under the provisions of our statute, because the sale of the premises was neither by the sheriff, or by virtue of execution directed to him, but it was made under a decree of foreclosure in the Circuit Court of the United States for this District, of a mortgage upon the premises, and by a trustee of that Court appointed for that purpose, and were purchased at a sale by the mortgagee for a sum of money less than the amount of principal and interest due upon it. We therefore order the rents referred to in the answers of Thomas R. Cochran, the garnishee as in hands be paid to the said Catherine H. Pascault, the purchaser of the premises under the mortgage. We consider the ruling in this case to be well sustained by the cases cited in the argument of the counsel for her. For what was said by the Court in the case cited by him of *Wilson v. Delaplaine*, 3 Harr., 499. which was an action in this court for money had and received, being for a part of the year's rent of intestate land sold by the Orphans' Court, up to the time of sale claimed by the administrators of the intestate, is as applicable in this as it was in that case, viz: that "the rule of the common law that rent follows the reversion is admitted on both sides. But it is contended for the administrators that this rule ought to be, or is, modified by our acts of Assembly apportioning rent in certain cases. We are of the opinion that those acts do not apply to the present case, and the principle of the common

law applies. The rent follows the reversion. The reversion is vested in the purchaser by virtue of the sale and assignment under the Orphans' Court, at the time when the rent falls due. For rent is indivisable. None of it is due until the expiration of the time during which it is accruing. The legistature has changed this in the particular case of a sale by the sheriff by virtue of execution process on judgment or decree, and they have apportioned the rent in that case between the debtor and the purchaser. But the provision extends no further. And in case of a sale of intestate land, under an order of the Orphan's Court, which is but a mode of dividing the land among the heirs of the intestate, and the purchaser takes all the estate of the intestate with its incidents, the accruing rent being one of them." 3 Harr., 500. And the reason for this ruling is only the stronger when the land is mortgaged and the sale of it is under a decree of foreclosure of the mortgage in an equity proceeding in the Circuit Court of the United States for the district by a trustee appointed to sell it, as in this case where the lien of the mortgage was as binding both in law and equity on the accruing rents and profits of the premises, as it was upon the land itself; for by the common law the non-payment of the mortgage money at the time fixed upon by the parties, was in the nature of a forfeiture of the estate by the mortgagor, and authorized the mortgagee to enter immediately, and to take the emblements. But in Equity he held them, as he did the land, only as a security for the payment of the mortgage debt; and upon redemption he was bound to account for such emblements. Having the legal right, however, and the land and its products being a security to the mortgagee for his debt, a court of equity will not deprive him of his legal right to the emblements until the mortgage money and interest is fully paid. *Alrich v. Rylands*, 1 Barb. Ch., 613; *Jones on Mortgages*, Sec., 1654: *Shepard v. Philbrick*, 2 Denio, 174; *Houts v. Showalter*, 10 Ohio St., 124. And to these citations we may add the authority of

28

*Chancellor Kent's Commentaries*, Vol. 4, 160, 161, and of 2 *Sto. Eq. Juris.*, Sec. 1015.

The conclusion of the court therefor is that the rents referred to in the hands of the garnishee, the said Thomas R. Cochran, should be paid to the said Catharine H. Pascault, the purchaser of the premises at the sale thereof on the foreclosure of the mortgage of the same wherein before stated.