JAMES T. GOODWIN *et al.* v. MILTON SMITH *et al.*

MORTGAGE— *Foreclosure*— *Sale*— *Sheriff's Deed*— *Growing Crops.* The purchaser at a judicial sale of mortgaged premises is entitled to the growing crop of wheat on the land against the tenant of the mortgagor who took a lease of the land after a suit for foreclosure had been commenced, and planted the wheat after judgment had been rendered in the foreclosure action, the purchaser having acquired a sheriff's deed on the 2d day of February, and the wheat not ripening and being ready for harvesting until the 20th day of June.

*Error from Sumner District Court.*

THE opinion states the material facts.

*James Lawrence,* and *W. W. Schwinn,* for plaintiffs in error:

By leasing the land described in the pleadings in this case, after the execution and recording of the mortgage thereon, and after a default in the terms of said mortgage, and after the commencement of a suit for the foreclosure of the mortgage, the defendant, Milton Smith, could not acquire any interest in the land, or any right to any crops on the land, which the mortgagor would not have had himself if he had tilled the land himself without leasing it. And further, the defendant could not, under a lease from the mortgagor or his grantee of the title, after judgment rendered and a decree foreclosing a mortgage on the land and for the sale of the land, sow the land to crops, and thereby acquire a right to hold the crops which his lessor would not have had; or, in other words, the lessee, Milton Smith, would not have any greater right on the land, or to crops sown by him on the land, than his lessor would have had to crops which he had himself sown; that is, neither the mortgagor nor his grantee of the title can, by making a lease after the commencement of foreclosure proceedings, confer on his lessee any right which the lessor did not himself have at the time of making the lease. This court has decided that growing crops pass to the purchaser of land at a sheriff's sale, as against a mortgagor, or as against a person who has

purchased the crops before the sheriff's sale from the mortgagor. *Life Insurance Co. v. Kiehl,* 25 Kas. 390; *Beckman v. Sikes,* 35 id. 120.

The distinction we contend for is, that the right of the lessee of the tenant of a life estate to take the emblements exists from the time of the creation of a life estate. And this court, having declared that no such right exists in the mortgagor, no act which he may do independent of the concurrence of the mortgagee, after the execution of the mortgage, can create in or confer upon a third person a right which militates in any degree against the rights which the mortgagee has, by virtue of the mortgage, against the mortgagor. The law has been declared by numerous authorities, among which are 1 Jones on Mortgages (2d ed.), § 780; 2 id., § 1658; Taylor, L. & T. (6th ed.), § 537; *Ruggles v. National Bank,* 43 Mich. 192, and cases there cited; *Downard v. Groff,* 40 Iowa, 597.

*Charles Willsie,* and *Reed & Nebeker,* for defendants in error:

The position of plaintiff is, that not only the landlord's share but the tenant's portion also passed to the purchaser, and, therefore, that defendant, Milton Smith, had no interest whatever in the crop raised by his labor. No complaint is made as to the terms of the letting being injurious to the mortgagee's rights, nor is there any fact or reason set up or claimed by the purchaser tending to show the slighest equity in his favor. The only argument made is, that if Sarah Begole had raised this crop it would have gone with the title to the purchaser; that the tenant of Sarah Begole cannot have any greater right than Sarah Begole herself; therefore, that the tenant has no right to the crop.

The two Michigan cases and the Kansas cases cited by plaintiffs in error have no application, because in all of them the crop was planted by the owner of the land. The doctrine of emblements does not apply in favor of landlords in default, nor even in favor of tenants who terminate the tenancy by their own act or default. Smith does not claim the possession, nor the right of possession, but only the right to

his emblements, the right of ingress and egress for the purpose of removing the crop. This right does not depend upon the continued duration of the lease given him by Sarah Begole. It presupposes that the lease was terminated. This right was not created by the lease nor by any contract. It is the creation of law and universal custom. In Hilliard on Real Property, p. 18, it is said :

"The doctrine of emblements is founded on the clearest equity and the soundest policy, and ought to receive liberal encouragement. Where a person is in possession of land under a title that may be determined by an uncertain event not within his control, it is essential to the interests of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown."

See, also, Black. Com., p. *124; 2 id., p. *145; 2 Bouv. Inst., § 1788; Tay. L. & T., §§ 534–536; 1 Hill. Real Prop., p. 383; Kent, Com., p. *111; *Martin v. Knapp,* 57 Iowa, 336; *Sherborn v. Jones,* 20 Me. 70; *Cassily v. Rhodes,* 12 Ohio, 88.

The reason which would prevent Sarah Begole from having emblements, if she had planted the crop, do not apply to Smith. She held her estate subject to the payment of the mortgage. She is liable for the mortgage to the extent of the property. Smith is in no sense legally nor morally bound to pay the mortgage. He was not in default. He was never benefited by the mortgage. He never received any of the consideration of it. The portion of the crop in controversy is the immediate product of his expense and toil, but for which there would not presumably have been a crop, and the mortgagee would not have had the benefit of the landlord's share, which we concede to him.

We would suggest further in regard to the civil case: First, that this suit is for an injunction, and is therefore governed by equity principles, and there is no equity in favor of either the mortgagee nor the purchaser nor James T. Goodwin. Second, the petition shows that the Alliance Trust Company is the owner of one-third of the crop only. Third, the answer in question denies that Goodwin owned any part of the crop,

unless it so resulted from the fact that he became the tenant from said purchaser. It did not so result. No assignment to him is alleged; therefore he had no title.

Opinion by SIMPSON, C.: This action was commenced to restrain Milton Smith, the defendant in error, from trespassing upon a quarter-section of land in Sumner county, and from cutting, carrying away or disposing of a wheat crop of 90 acres growing on said land. Smith had rented the land for a year from the owner, in March, 1890. He had planted corn and oats in the spring, and, in accordance with the terms of his lease, had planted 90 acres in wheat in the fall of 1890. At the time he rented the land, a suit was pending to foreclose a mortgage on the land given by the grantor of the lessor. Judgment was rendered in this action on the 7th day of May, 1890. The land was sold at judicial sale on the 29th day of December, 1890, (after said wheat was up and growing,) and the sale was confirmed and the sheriff ordered to make a deed on the 2d day of January, 1891. The sheriff executed a deed to said land to the Alliance Trust Company on the 5th day of January, 1891. Smith was ejected from said land by the sheriff, under a writ of possession, on the 2d day of February, 1891. On the 20th day of June, 1891, the wheat being ripe and ready for harvest, Smith, with horses and reapers and help, entered upon said land with the intent of harvesting and saving said wheat crop, and of keeping two-thirds of said crop, and of delivering one-third of said wheat crop to the Alliance Trust Company, or its agents, and would have cut and shocked said wheat in four days' time, if he had not been prevented by the temporary injunction issued in this action. By the terms of his lease, Smith was entitled to two-thirds of the wheat and the landlord to one-third. Subsequently, on the final trial of the case, the district court of Sumner county dissolved the pending injunction and rendered judgment in favor of Smith for costs. The Alliance Trust Company brings the case here and asks us to reverse the ruling below, because they claim that all the rights of Smith were divested by the sale and deed

under the foreclosure proceedings. The question to be decided, therefore, is, whether a tenant is entitled to his share of the crop, who takes a lease after a suit in foreclosure against his landlord has been commenced, and sows a crop of wheat after judgment in the foreclosure proceedings, and there is a judicial sale of the land and a sheriff's deed to the purchaser before the crop ripens and is ready to harvest. Following the case of *Beckman v. Sikes*, 35 Kas. 120, and authorities cited therein, we are compelled to answer this question in the negative. The question is not new, and has been troublesome with the courts, and a variety of contradictory statements can be found in the books, but the best considered modern cases all favor the view of the plaintiffs in error. It is said in that case:

"The lien of the mortgage and the judgment, however, attached to the growing crops until they were severed, as well as to the land. The mortgagor planted the crop knowing that it was subject to the mortgage, and liable to be divested by the foreclosure and sale of the premises. Any one who purchased such crops from him took them subject to the same contingency, as the recorded mortgage and decree of foreclosure were notice to him of the existence of the lien. If the land is not sold until the crops ripen and are removed, the vendee of the mortgagor would ordinarily get a good title; but if the land was sold and conveyed while the crops are still growing, and there was no reservation or waiver of the right to the crop at such sale, the title to the same would pass with the land," citing *Smith v. Hague*, 25 Kas. 246; *Chapman v. Veach*, 32 id. 167; *Garanflo v. Cooley*, 33 id. 137; Jones on Mortgages, §§ 676, 780, 1658; 1 Washb. Real Property (3d ed.), 124; *Jones v. Thomas*, 8 Blackf. 428; *Downard v. Groff*, 40 Iowa, 597; *Shepard v. Philbrick*, 2 Denio, 174; *Lane v. King*, 8 Wend. 584; *Gillett v. Balcolm*, 6 Barb. 370; *Scriven v. Moote*, 36 Mich. 64; *Howell v. Schenck*, 4 Zab. 89; *Pitts v. Hendrix*, 6 Ga. 452; *Rankin v. Kinsey*, 7 Bradw. 215; *Sherman v. Willett*, 42 N. Y. 146; 1 Schouler, Personal Property, 133.

While that case was between the purchaser from a mortgagor, who claimed a crop of growing and immature corn, and the purchaser of the land at a foreclosure sale, we think the same rule applies to a tenant who leases the land after a suit

for foreclosure has been commenced and sows the wheat long after judgment has been rendered. We regard the case of *Downard v. Groff*, 40 Iowa, 597, as being directly in point, it being a controversy as to the rights of a tenant who had leased mortgaged land. The mortgage was executed on the 22d of October, 1867, and duly recorded on October 22, 1869. November 1, 1870, the mortgagor leased said premises, by parol, for one year, and the lessee went into possession. Suit to foreclose the mortgage was commenced January 4, 1871. A judgment of foreclosure was rendered April 29, 1871, and sheriff's deed executed to the purchaser on May 8, 1871. On this state of facts the court say:

"By the lease from Dorstal, the mortgagor, to Leroy, the latter acquired no greater rights in the premises than the mortgagor had. The tenant stands exactly in the situation of the mortgagor. As between the mortgagor and mortgagee, the latter, by the foreclosure and sale, became entitled to the possession of the premises and to all the crops then growing thereon. This right of the purchaser was not and could not be defeated by reason of the lease, or by the fact that the possession was in, or that the crops were grown by, the lessee. The right to the possession and the right to the growing crops passed to the purchaser. If the tenant had been made a party to the foreclosure suit, the possession and the crops could have been delivered to him by process under that judgment; but since he was not made a party thereto, he cannot obtain that remedy except by some other action. The purchaser's rights, however, are just the same as they would have been if the tenant had been made a party. It follows, therefore, that Groff, by his purchase and sheriff's deed, became the absolute owner of the premises, including the crops growing thereon; and by his conveyance he invested the plaintiff herein with that ownership, and she might by proper action have enforced her rights as such owner against the tenant. Her failure to do so cannot give her any cause of action against the defendant, her grantor. There was, therefore, only a technical breach of warranty, entitling plaintiff to nominal damages.

"This is clearly the doctrine of all the cases, both ancient and modern, unless it may be the case of *Cassilly v. Rhodes*, 12 Ohio, 88, and that case seems to be based upon a construc-

tion of the appraisement law of that state. And the whole matter is well summed up in *Jones v. Thomas*, 8 Blackford, 428, as follows: 'A mortgagor is not entitled to emblements as tenants at will are. (4 Kent's Com. 456.) A mortgagee may evict the mortgagor without notice, and retain the emblements; and if a lease be granted subsequently to the mortgage without his concurrence, he may evict the lessee without notice and retain the emblements.' (Coote on Mortg. 351; 2 Swift's Dig. 156; 2 Cruise's Dig. 108.) The reason of this was said by the older writers to be, that the lessee was evicted by a title paramount, and the lease of the mortgagor amounted to a disseisin of the mortgagee, which rendered the lessee upon entry a wrong-doer. But a sufficient and better reason appears to be, that every person who takes under a mortgagor takes subject to all the rights of the mortgagee, unimpaired and unaffected. (4 Kent's Com. 157; 16 Johns. R. 292; 18 id. 487; 6 Cowen, 147.) When, therefore, a mortgagee obtains the absolute estate in fee of the mortgaged premises, by becoming the purchaser under a foreclosure and sale, he is entitled to the emblements, and may maintain trespass against the mortgagor or his lessee for taking and carrying away the crops growing at the time of the sale, (*Lane v. King*, 8 Wend. 584,) the title and interest of the mortgagor or his lessee being subject to, and liable to be divested by, a foreclosure and sale of the mortgaged premises. (*Shepherd v. Philbrick*, 2 Denio, 174.) See also the cases cited in a note to the last case, and also the numerous authorities cited and stated in Hill on Mortg. (3d ed.), vol. 1, ch. 9, note *c*."

We are compelled by the force of this decision, as well as the language of this court in *Beckman v. Sikes*, to recommend that the judgment be reversed.

By the Court: It is so ordered.

All the Justices concurring.