ALEXANDER McFADDEN, Appellant, *v.* VAN BUREN ALLEN and Others, Respondents.

*Removing a portion of the machinery of a saw-mill and substituting other machinery for it by a person entering under a parol contract of purchase — when the substituted machinery becomes a part of the realty as to a purchaser under a foreclosure of a prior mortgage of which the contract vendee had notice.*

Upon the trial of an action, brought by the plaintiff to recover the value of certain structures, machinery and other articles described in the complaint which the plaintiff had placed upon a parcel of land, to which his father, Jeremiah McFadden, held the legal title, the evidence showed that the plaintiff entered upon the said premises by virtue of a parol agreement between himself and his father, by the terms of which, upon performing certain conditions, he was to become owner thereof; that when the plaintiff entered upon the said premises there was standing thereon a saw-mill, in which there were machinery and fixtures for sawing lumber, and that he removed a portion thereof and substituted other machinery in its place, and that he added to and repaired the building. At the time the arrangement was made between the plaintiff and his father the premises were subject to a mortgage which had been executed by Jeremiah McFadden to Austin Wallace to secure the payment of $400, of which the plaintiff had notice; which mortgage was subsequently foreclosed by action, the present plaintiff being made a party defendant thereto but not appearing or interposing any defense therein. The premises were sold at public auction and bid in by a subsequent mortgagee, who thereafter conveyed them to the defendants in this action, who went into possession thereof as purchasers in good faith.

The present plaintiff undertook by force to remove the machinery and other improvements which he had placed upon the premises, and partially succeeded in doing so, but was interrupted before he had fully accomplished his purpose, he then brought this action to recover the value of the articles which he was prevented from removing.

*Held,* that whatever might be the rights of the plaintiff, as against his father under their agreement, it was clear that, as against the defendants, who derived their title through the foreclosure of the Wallace mortgage, and the conveyance to them by the mortgagee, who purchased at the foreclosure sale, that such machinery and other improvements must be regarded, in view of all the facts and circumstances of this case, as a part of the realty, and as such belonged to the defendants. (LANDON, J., dissenting.)

*McRea* v. *Central National Bank* (66 N. Y., 501); *Snedeker* v. *Warring* (12 id., 171) followed.

APPEAL from a judgment of nonsuit rendered upon the trial of this action at the St. Lawrence Circuit, and entered in the office of the clerk of the county of St. Lawrence on October 25, 1887.

*Horace D. Ellsworth,* for the appellant.

*John C. Keeler,* for the respondents.

INGALLS, J.:

We think the nonsuit directed at the circuit was proper under the facts developed at the trial. The action was brought by the plaintiff to recover the value of certain structures, machinery and other articles described in the complaint, and which the plaintiff placed upon a parcel of land, of which his father, Jeremiah McFadden, held the legal title. The plaintiff claims that the defendants wrongfully detained said property and converted the same to their use. The evidence shows that when the plaintiff entered upon said premises there was standing thereon a saw-mill, in which there were machinery and fixtures for sawing lumber, and that he removed a portion thereof and substituted other machinery in its place, and that he added to and repaired the building. Such entry upon the premises seems to have been by virtue of a parol agreement between the plaintiff and his father, by the terms of which the plaintiff, upon performing certain conditions, was to become the owner thereof. It seems quite apparent from the evidence that there was no intention on the part of either the plaintiff or his father to create the relation of landlord and tenant between them, and seemingly the improvements were placed upon the premises by the plaintiff without any expectation on his part to be at liberty to remove the same in the character of a tenant, but rather with the purpose of becoming the owner of the premises and thereby reaping the benefit of such improvements. Such we deem the reasonable inference to be drawn from the evidence, and upon such state of facts the law would regard the plaintiff as standing, in equity, in the light of a purchaser of the premises. (*Freeman* v. *Freeman,* 43 N. Y., 34; *Martin* v. *Rector,* 30 Hun, 139; affirmed in 101 N. Y., 77.) At the time the arrangement was made between the plaintiff and his father the premises were subject to a mortgage which had been executed by Jeremiah McFadden to Orson Wallace to secure the payment of $400, of which the plaintiff had notice. Such mortgage was subsequently foreclosed by action, and the plaintiff herein was made a party defendant thereto, but interposed no defense, nor did he even appear in such action. The premises were sold at pub-

lic auction and bid in by the Misses Harrison, who held a subsequent mortgage upon said premises; and after such sale had became confirmed they conveyed the premises to the defendants in this action, who went into the possession thereof as purchasers in good faith. The plaintiff undertook, by force, to remove the machinery and other improvements which he had placed upon the premises, and partially succeeded, but was interrupted before he had fully accomplished his purpose, and now seeks in this action to recover the value of the articles which he was prevented from removing. Whatever may be the rights of the plaintiff, as against his father under their arrangement, we are clearly of the opinion that as against these defendants, who derive their title through the foreclosure of the Wallace mortgage and the conveyance to them by the Misses Harrison, who purchased at the foreclosure sale, that such machinery and other improvements must be regarded, in view of all the facts and circumstances of this case, as part of the realty, and as such to belong to the defendants. (*McRea* v. *Cent. N. Bank*, 66 N. Y., 501; *Snedeker* v. *Warring*, 12 id., 171.) The removal by the plaintiff of the machinery and other articles from the mill after he went into possession, could but have the effect to impair the security under the mortgage, provided he should be allowed to appropriate to his own use the substituted machinery and fixtures. The plaintiff assumed control of the premises, with full knowledge of the mortgage, and we think that his version of the transaction in regard to his right to remove the improvements is inconsistent with the other facts of the case. The letters which he addressed to Mr. Harrison, and which are found at folio 175 of the case, are strongly at variance with the theory upon which he seeks to sustain this action. In those letters he states, in unequivocal terms, that he was the owner in fee simple of the premises upon which the improvements were placed. The letter, exhibit No. 3, contains the following: "I have paid father for land, and have deed of same subject to mortgage. By placing the wood lot and mill lot in mortgage, can give you mortgage on same. Mr. Harrison, will you help me? If so, I can swing; if not, I stand a chance to lose what I have paid on engine and land." It further appears that the plaintiff united with his father in a mortgage which embraced the premises in question, on the 16th day of June, 1885. It would

seem, from all the facts of the case, that the pretense of the plaintiff that he was at liberty to remove the improvements from the premises, was, an after-thought, prompted by a desire to save something from the wreck, after his failure to secure money by mortgage, and certainly his conduct does not savor of honesty. If the view which we have taken of the case is sound, it follows that the court properly overruled the offer of plaintiff's counsel to prove the facts stated at folio 170 of this case, as such proposed evidence was immaterial and incompetent, in view of the facts established when the offer was made and the law applicable thereto.

We conclude that the cause was properly decided at the circuit and that the judgment should be affirmed, with costs.

LEARNED, P. J., concurred.

LANDON, J. (dissenting):

I cannot concur. The testimony on the part of the plaintiff tended to show that after the date of the mortgage under which the defendants acquired title to the premises, the plaintiff entered into possession under an agreement with his father, the mortgagor, that the plaintiff might have the premises, provided he could pay off the mortgage; that meantime he could place his improvements thereon, with the right to remove them, provided he should find himself unable to pay the mortgage. Under such an agreement it was competent for the plaintiff to place the machinery and trade erections upon the premises with the intention to remove them in case he should not pay the mortgage, or it was competent for him, notwithstanding the agreement with his father, to place them upon the premises without any such intention, and thus make them a part of the realty. One or the other of these inferences was deducible from the evidence, and which one should be drawn, it was for the jury to decide. Our laws do not give the mortgagee as great rights in respect to trade erections and machinery put upon the premises after the date of the mortgage as the laws of England and Massachusetts do. (*Tifft* v. *Horton,* 53 N. Y., 377, 385.)

Clearly it does the prior mortgagee no wrong to remove such improvements, if the premises are left in as good condition as they were when the mortgage was given. If the mortgagor or his grantee puts such improvements upon the premises, they presumably

become a part of the realty; but if a tenant puts them there, or a vendee or donee of the land under an executory or conditional contract, the presumption of absolute merger in the realty is less, because his title to the realty is less, and it is consonant with justice that so long as he does the mortgagee no wrong, effect should be given to his contract with the mortgagor that he shall not lose title to his improvements, if because of the mortgage or otherwise he fail to acquire title to the land. The plaintiff was not conventionally a tenant, but his tenure was precarious, and he dealt, if his testimony is credible, with reference to his right of salvage from the impending wreck. True, a tenant upon foreclosure sale, loses his growing crops. (*Lane* v. *King*, 8 Wend., 584.) The rule is a harsh one, but growing crops consume the season and, perhaps, exhaust the soil. Erections and machinery do not, and in our State in this respect the rigor of the old laws is relaxed in favor of justice. (*Tyson* v. *Post*, 108 N. Y., 217.)

The judgment in foreclosure did not bar the plaintiff in this respect. The complaint was in the usual form in foreclosure, and no issue respecting the extent to which the improvements upon the realty had become merged in the realty was tendered by the complaint; and hence none was settled by the judgment. No unmortgaged interest was sold, and unmerged improvements were not mortgaged. If these erections passed under the mortgage judgment it was because of the intent of the plaintiff to make them part of the realty itself. If under the agreement with his father he had no such intent, they remained personal property. If as between the plaintiff and his father they were personal property, they remained so against the title acquired under the mortgage; for the foreclosure only passed such title as the father had when he gave the mortgage, and such as was acquired or added under him subsequent to the date of the mortgage. Whether the fixtures were added to the realty, or were kept by agreement and intention separate from it, was for the jury. The declarations of the plaintiff that he owned the premises did not estop him since nobody acted upon them. They are evidence against him, but are to be weighed in the light of the fact that in order to borrow the money he solicited he must have made his declarations true; and he could probably have done so with the co-operation of his father and of the

lender. The plaintiff probably hoped to have the lender pay off the old mortgage, then to have his father give plaintiff the promised deed, and then plaintiff could give the lender a new mortgage. This seems to have been practicable, and if accomplished no one would have been deceived or injured by the declaration of the plaintiff that he was the owner. The law punishes deceit causing damage, not the harmless fiction which too confidently anticipates the things hoped for.

Judgment affirmed, with costs.